UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE DUNIGAN and MICHELLE
COLSTON, Individually and as Next
Friend of A.C., a Minor, D.W., a Minor,
and S.W., a Minor,

Case No. 22-cv-11038

Plaintiffs,

Paul D. Borman
United States District Judge

v.

TROOPER MICHAEL THOMAS,
TROOPER BLAKE ELLSWORTH,
TROOPER MAXWELL PRINCE,
TROOPER JON TIBAUDO,
TROOPER DAN CLISE, TROOPER
THOMAS KILL, TROOPER STEVEN
CHENET, TROOPER AARON
LOCKE, SERGEANT HOFFMAN,
SERGEANT PINKERTON, TROOPER
PINKERTON, SERGEANT
GRUENWALD, DETECTIVE
SERGEANT THOMAS DHOOGHE,
DETECTIVE SERGEANT JOSHUA
DIRKSE, DETECTIVE TROOPER
JASON BAXTER, DETECTIVE
TROOPER MARK SWALES,
TROOPERS ROE #s 1-10, and
TROOPERS JOHN DOE #s 1-10,

Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 25)

This case arises out of the April 21, 2021, execution of a search warrant at the home of Plaintiffs, Renee Dunigan, her daughter, Michelle Colston, and Michelle's three minor children, A.C., D.W., and S.W., in Flint, Michigan, by Defendants, Michigan State Police (MSP) officers. Plaintiffs bring five Fourth and Fourteenth Amendment claims, as well as three state law claims, against all Defendants.

Now before the Court is Defendants' Motion to Dismiss, in which Defendants seeks dismissal of all of Plaintiffs' claims. (ECF No. 25.) The motion has been fully briefed. The Court held a hearing on Defendants' motion on Friday, February 10, 2023, at which counsel for Plaintiffs and Defendants appeared.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations

On or about April 20, 2021, a 16-year-old African-American male was shot and killed during a drive-by shooting in Flint, Michigan. (ECF No. 2, Compl. ¶ 23.) The victim was shot while driving and crashed his vehicle into a tree. Shell casings from two different caliber guns were found at the scene, leading officers to believe that there were two suspects. (ECF No. 25-2, Application and Affidavit for Search

2

Warrant ("S.W. Affidavit"), PageID.195-96) (ECF No. 25-3, Incident Report, PageID.208.)[1] Two handguns were found, concealed, near the victim, but the guns matching the fired casings were not located. (ECF No. 25-3, Incident Report, PageID.207-08.)

---

[1] For purposes of a motion to dismiss, the Court takes the factual allegations in Plaintiffs' Complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When reviewing a motion to dismiss, the Court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the Court may consider "documents incorporated into the complaint by reference ... and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to plaintiff's claim." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (explaining that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

The Court finds that the Application and Affidavit for a Search Warrant and the Incident Report are deemed part of Plaintiffs' Complaint because those documents are referred to in Plaintiffs' Complaint and are central to Plaintiffs' claims. (*See* ECF No. 2, Compl. ¶¶ 27, 29-30.) The Court notes that Plaintiffs in fact concede in their Response brief that Exhibits A – D to Defendants' motion to dismiss – the Affidavit and Application for Search Warrant, the Incident Report, Dash Cam Footage, and Scene Photos – are "arguably appropriate" to consider on this motion to dismiss, and the Court agrees. Plaintiffs contend that the remainder of the Exhibits attached to Defendants' motion (all witness affidavits) are "improperly attached." (ECF No. 34, Pls.' Resp., fn.1, PageID.353.) The Court again agrees, and will disregard the 16 affidavits attached as Exhibits E through T to Defendants' motion to dismiss, ECF Nos. 25-6 to 25-21.

Based on eyewitness testimony, surveillance footage, and evidence at the scene, Michigan State Police (MSP) Detective Defendants were able to identify one of the suspects to the shooting as Demaurel Jackson. (ECF No. 25-2, S.W. Affidavit, PageID.197.) In addition, Defendants were able to ascertain the make, model, and ownership of the suspect vehicle involved in the drive-by shooting – a 2015 silver Nissan Altima owned by Breshanna Bailey. (*Id.*) An arrest warrant for Jackson was obtained, and he was arrested outside of a residence on McClure Avenue in Flint, Michigan. (*Id.* PageID.198.)

The owner of the suspect vehicle, Bailey, was also found at the McClure Avenue residence. Bailey was questioned by Detectives, and she advised that Jackson was her boyfriend. (*Id.*) Bailey informed the officers that she had been with Jackson on April 20, 2021, when Jackson dropped her off at work in the morning, and that Jackson was in possession of her car the remainder of that day. (*Id.*) However, after she worked that day, Jackson was no longer in possession of her car. (*Id.*) Bailey then informed Detectives that the following day, April 21, 2021, she was with Jackson when they drove to a blue house, later determined to be 1534 Garland Street, in Flint, Michigan, that she observed Jackson go "into the residence and c[o]me back out of the residence," and she observed her car "parked behind the house at 1534 Garland St." (*Id.*) (ECF No. 2, Compl. ¶ 29.)

4

Bailey stated that she could take the Detectives to where her car was located, and Bailey and the Detectives then traveled to the 1534 Garland Street residence. (ECF No. 25-2, S.W. Affidavit, PageID.198.) Upon their arrival, Bailey pointed out her vehicle "parked behind the house at 1534 Garland St." (*Id*.)

On April 21, 2021, Detective Baxter obtained search warrants for several residences where Jackson had been following the shooting on April 20, 2021, including the 1534 Garland Street residence. (ECF No. 25-2, S.W.) (ECF No. 25-3, Incident Report, PageID.214-15.)

Plaintiffs assert that they have rented and occupied the home at 1534 Garland Street, in Flint Michigan, for fourteen years, "with no history of criminal activity, gang activity, or any wrongdoing whatever." (ECF No. 2, Compl. ¶ 25.) Significantly, Plaintiffs' home shares a single driveway with the house immediately next door, at 1536 Garland Street. (*Id.* ¶ 26.) Plaintiffs state that the subject Nissan Altima had been parked in the same location, in the shared portion of the driveway between the houses, since 7:00 a.m. on the morning of April 21, 2021, and that it had not been moved all day. (*Id.* ¶ 28.)

As approximately 10:00 p.m. on April 21, 2021, MSP's Emergency Support Team (ES Team) executed a search warrant at 1534 Garland Street. (ECF No. 2, Compl. ¶ 34.)

5

Plaintiffs allege that, "immediately prior to the execution of the warrant," Plaintiff Michelle Colston had just gotten out of the shower, her two sons, D.W. and S.W., were upstairs in bed, and Plaintiff Renee Dunigan was in the living room, close to the front door, with her granddaughter, A.C. (*Id.* ¶¶ 35-36.) Plaintiffs contend in their Complaint that Defendants executed the Search Warrant without knocking or properly announcing themselves. (*Id.* ¶¶ 34, 37.) They contend that Defendants used a battering ram to break in the front door of Plaintiffs' home, and then forcibly entered the residence, with weapons drawn. (*Id.* ¶ 37.) Plaintiffs allege that Defendants raided Plaintiffs' home "using excessively large numbers of officers, approximately fifteen to forty Defendant officers." (*Id.* ¶ 40.) The Court notes that it appears on the dash cam video that the ES Team entering Plaintiffs' home was comprised of eight officers, and that Plaintiffs have named 16 officers as Defendants here.

Defendants, on the other hand, contend that prior to entry into Plaintiffs' residence, their vehicles' emergency lights were activated and announcements of "State Police search warrant" were made on a loudspeaker outside of Plaintiffs' residence, which Defendants contend could be seen and heard on the dash camera of a patrol vehicle. (ECF No. 25-4, Ex. C, Dash Camera Footage at 0:29; 0:36.)

Defendants assert that the dash camera also captured other officers announcing their presence. (*Id.*, citing Ex. C at 0:36.)

Plaintiffs allege that, upon Defendants' entry into Plaintiffs' home, Defendants ordered Plaintiffs, including the three minor children, into the living room, at gunpoint. (ECF No. 2, Compl. ¶ 40.) Defendants would not allow Plaintiff Michelle Colston to put clothes on, despite the raid interrupting her shower, and instead required her to wrap herself "in any cover she could get her hands on." (*Id.*) Defendants barred Plaintiffs' family members and neighbors from entry into Plaintiffs' home during the search, and prevented Plaintiffs from either making phone calls to, or answering phone calls from, concerned family members and neighbors during that time. (*Id.*) Plaintiffs allege that Defendants "ransacked" Plaintiffs' home, "pulled clothes and personal items out of their closets and dressers," and that Defendants "yelled loudly at Plaintiffs in rude, threatening, racist, and insulting terms," including "referring to Plaintiffs as 'you people.'" (*Id.*)

Plaintiffs allege that Defendants confined Plaintiffs in their home for about an hour during the search before asking about the silver Nissan Altima parked in the shared driveway. (*Id.* ¶ 42.) At that time, Defendants learned from Plaintiffs that "Plaintiffs had no affiliation with that vehicle," (*id.*), and that the subject vehicle was

associated with the neighboring residence at 1536 Garland Street. (ECF No. 25-3, Incident Report, PageID.215.)

"After discovering Breshanna Bailey had misinformed detectives of the residence" to which Jackson had taken her car, Defendants obtained and executed a search warrant at the 1536 Garland Street residence. (*Id.* PageID.216.) Residents at the 1536 Garland Street house confirmed that the subject vehicle belonged to their friend's girlfriend, and that their friend ("D" or "Maurel") dropped the car off at the house on April 20, 2021, removed the vehicle's license plate, put it under a bed in the house, and then left. (ECF No. 25-3, Incident Report, PageID.217.)

## B.   Procedural History

On May 16, 2022, Plaintiffs filed the instant lawsuit against 16 MSP officers, asserting the following eight causes of action against all Defendants: **Count I** – Unreasonable Entry, Search and Seizure under the Fourth and Fourteenth Amendments based on a lack of probable cause; **Count II** – Unreasonable Entry, Search and Seizure under the Fourth and Fourteenth Amendments based an unreasonable execution of the search warrant; **Count III** – False Imprisonment under the Fourth Amendment; **Count IV** – Excessive Force under the Fourth Amendment; **Count V** – Equal Protection under the Fourteenth Amendment; **Count**

8

**VI** – Intentional Infliction of Emotional Distress;[2] **Count VII** – Trespass; and **Count VIII** – False Imprisonment under Michigan law.

On August 12, 2022, Defendants filed a Motion to Dismiss Plaintiffs' Complaint. (ECF No. 25, Defs.' Mot.) Defendants argue that Plaintiffs' claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendants further argue that, even if Plaintiffs' claim have been properly pleaded, Defendants are entitled to qualified immunity from Plaintiffs' federal claims, and governmental immunity from Plaintiffs' state law claims. Defendants argue that:

> The unfortunate circumstances here stemmed from a witness that provided inculpatory information about her boyfriend—a murder suspect, led police to her car that was used in the murder, but then either lied or mistakenly told about which house the murder suspect had entered. While the circumstances surrounding the execution of this search warrant are regrettable, they are not unlawful.

(*Id.* PageID.166.)

Plaintiffs filed a Response in opposition to Defendants' motion to dismiss on September 23, 2022. (ECF No. 34, Pls.' Resp.) Plaintiffs argue that they have properly stated their federal and state law claims, and that Defendants do not have qualified immunity under federal law, or governmental immunity under state law.

---

[2] Plaintiffs' Complaint contains two "Fifth Claims for Relief." For clarity, the Counts have been renumbered here.

9

On October 7, 2022, Defendants filed a Reply brief in support of their motion to dismiss. (ECF No. 36, Defs.' Reply.) Defendants argue that Plaintiffs' allegations demonstrate that Defendants searched Plaintiffs' home pursuant to a facially valid warrant, that they executed the search in a reasonable manner, and that Plaintiffs fail to overcome Defendants' qualified immunity.

## II.  LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an

10

unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Electronic Merchant Sys. LLC v. Gaal*, 58 F. 4th 877, 882 (6th Cir. Jan. 30, 2023) ("[T]he court does not have to accept as true 'unwarranted factual inferences.'") (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions

11

of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg*, 177 F.3d at 514 (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

## B.    Qualified Immunity

Qualified immunity "shields 'government officials performing discretionary functions' from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "This immunity 'gives government

officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Qualified immunity thus balances "the need to hold public officials accountable when they exercise power irresponsibly" with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Although a defendant ordinarily bears the burden of proof for an affirmative defense, where a defendant raises qualified immunity, the plaintiff "bears the burden of showing that [the] defendant[ ] [is] not entitled to qualified immunity." *Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016) (citing *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). A plaintiff can carry this burden at the pleading stage "by alleging facts [that] mak[e] out a plausible claim that [the] defendant['s] conduct violated a constitutional right that was clearly established at the time of the violation." *Id.* "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Plaintiff thus bears the burden of showing that the right was clearly established. *Cunningham v. Shelby Cnty., Tenn.*, 994 F.3d 761, 765 (6th Cir. 2021). And to do so, a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered. *Id.* at 766.

When determining whether an individual's rights are clearly established for purposes of qualified immunity, "[t]he sources of clearly established law to be considered are limited. [Courts in this Circuit] look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth] [C]ircuit, and finally to decisions of other circuits." *Martin v. City of Broadview Heights*, 712 F.3d 951, 961 (6th Cir. 2013). Courts "must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)). Indeed, a court's task "requires a high 'degree of specificity.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)).

This specificity "is 'especially important in the Fourth Amendment context.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12). It is why the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances ... was

14

held to have violated the Fourth Amendment.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). And "[w]hile there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). Thus, as the Sixth Circuit has explained, a "defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.'" *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (quoting *Plumhoff*, 572 U.S. at 779).

## III.  ANALYSIS

### A.      Fourth Amendment – Unlawful Search (Count I)

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV). "[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," and "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without

a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 585-86 (1980) (quotations omitted).

Thus, pursuant to the Fourth Amendment, law enforcement officers must obtain a warrant based on probable cause "from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Probable cause demands "a fair probability that contraband or evidence of a crime will be found in a particular place," *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (quoting *United States v. Brown*, 857 F.3d 334, 339 (6th Cir. 2017)) (internal quotation marks omitted), and it "exists if 'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.'" *Peffer v. Stephens*, 880 F.3d 256, 263 (2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). "The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only probable cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Id.*

"When determining whether an affidavit establishes probable cause, [the Court] look[s] only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Brooks*,

16

594 F.3d 488, 492 (6th Cir. 2010) (citation omitted). The Court's "job is not to reweigh the assertions in an affidavit but to ask whether the magistrate had a substantial basis for his conclusion." *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (citing *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017), and explaining that "probable cause is not the same thing as proof"). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and "the Supreme Court has emphasized that '[p]robable cause "is not a high bar" to clear.'" *Christian*, 925 F.3d at 311 (internal and end citations omitted); *see also United States v. Runyon*, 792 F. App'x 379, 382 (6th Cir. 2019) ("[B]ecause being searched is different than being convicted, and because search warrants 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation,' probable cause presents a less demanding standard than 'proof beyond a reasonable doubt' or 'preponderance of the evidence.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 235-36 (1983)). The issuing judge may rely on an experienced officer's conclusions regarding the existence of evidence of a crime and the likelihood it will be found in certain locations. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003); *see also Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) ("In § 1983 actions, an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant.").

17

A Fourth Amendment challenge to a judge's probable cause determination therefore fails if the judge has a "substantial basis for … conclud[ing] that a search would uncover evidence of wrong doing." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009). As the United States Supreme Court explained:

> The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent, and people like [Plaintiffs] unfortunately bear the cost.

*Los Angeles Cnty., Ca. v. Rettele*, 550 U.S. 609, 615 (2007).

Officers violate the warrant requirement if they make "a false statement [in a warrant affidavit] knowingly and intentionally, or with reckless disregard for the truth" and the "false statement is necessary to the finding of probable cause." *Bailey*, 860 F.3d at 385 (quoting *Franks*, 438 U.S. at 155-56) (internal quotation marks omitted). An assertion is made with reckless disregard when, viewing all the evidence, the affiant entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. However, incorrect statements due to mere alleged negligence or innocent mistake are insufficient to void a warrant. *Franks*, 438 U.S. at 171. A plaintiff, thus, may establish a violation of his Fourth Amendment right to be free from unreasonable search and seizure, by showing that (1) the officer's warrant affidavit contained a

18

false statement or omission that was made either deliberately or with reckless disregard for the truth; *and* (2) the false statement or omission was material to the finding of probable cause. *See Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020) (citations omitted); *see also Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (same).

Plaintiffs allege in Count I of their Complaint that Defendants obtained a search warrant that lacked probable cause because the search warrant was based on an affidavit that contained material, false statements and/or omissions that were made either deliberately or with reckless disregard for the truth. (ECF No. 2, Compl., Count I.) Plaintiffs contend that the Search Warrant Affidavit contains two false/misleading statements: (1) that the subject vehicle was parked "behind" the 1534 Garland St. residence, when the vehicle was parked in the shared portion of the driveway with the neighboring residence at 1536 Garland Street, and the Affidavit failed to state that the vehicle was parked in a "shared" driveway; and (2) that Bailey told MSP officers that she saw her "boyfriend-murder suspect go in and out of 'the residence' earlier that day, falsely suggesting that the 'residence' was 1534 Garland without actually specifying the address." (*Id.* ¶ 30.) Plaintiffs further fault Defendants for accepting Bailey's statements that Jackson entered Plaintiffs' home

without questioning or scrutinizing her credibility when they knew she was Jackson's girlfriend and thus, Plaintiffs allege, she had a "motive to lie." (*Id.* ¶ 31.)[3]

Defendants argue in their motion to dismiss that, even accepting these allegations as true, Plaintiff's Fourth Amendment claim in Count I still fails because neither allegation defeats probable cause. Defendants argue that "behind" versus

---

[3] Plaintiffs allege in their Complaint that Baily "likely never made" the statement that she saw Jackson go into and out of the Plaintiffs' house "because it never happened." (ECF No. 2, Compl. ¶ 31.b.) However, that speculative assertion – that Bailey "likely never made" the statement to Defendants – is without any basis and can be rejected as unsupported conjecture. *See Electronic Merchant Sys. LLC*, 58 F.4th at 882 ("[T]he court does not have to accept as true 'unwarranted factual inferences.'").

Plaintiffs further point out that the search warrant, at times, mistakenly states "1434 Garland Street" instead of "1534 Garland Street." However, the Court finds that these typographical errors do not render the search warrant constitutionally invalid. *See Knott v. Sullivan*, 418 F.3d 561, 568-69 (6th Cir. 2005) (stating that "technical inaccuracies in a warrant do not automatically render unconstitutional searches conducted pursuant to such a warrant"); *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) ("The test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched.") (internal quotation marks and citations omitted). The Court finds, based on a review of the search warrant and affidavit as a whole, that there is not a reasonable probability that the wrong property (1434 Garland Street) could have been mistakenly searched. *See Knott*, 418 F.3d at 569 (explaining that "this court has previously upheld searches conducted pursuant to warrants listing incorrect addresses or property descriptions in part because the police officers involved in executing the search had also served as affiants or were otherwise familiar with the location to be searched.") (collecting cases).

"beside" is "a distinction without a difference for purposes of probable cause" because the photos from the scene show the suspect vehicle located in the driveway adjacent to Plaintiffs' residence, and towards the rear of the residence, and thus "behind" is not a false statement. (ECF No. 25, Defs.' Mot., PageID.172.) Defendants further contend that Plaintiffs' exception with the use of the phrase "the residence" in the affidavit is without merit. Rather, looking at the actual language in paragraph 30 of Baxter's affidavit in support of the search warrant – which states "Bailey was with Jackson when they went to *1534 Garland Street*. Bailey advised Jackson went into *the residence* and came back out of *the residence*" – Plaintiffs' assertion that Bailey was not referring to the 1534 Garland Street address or that the affidavit should have restated the address yet again "is nonsensical, if not outright disingenuous." (*Id.* PageID.173-74, citing ECF No. 25-2, S.W. Aff. ¶ 30, PageID.198 (emphases added).) Defendants further state that Baxter's Affidavit identified Bailey as the suspect's girlfriend, and thus the judge who reviewed the affidavit was aware of the relationship and still found probable cause. Defendants argue that, accepting Plaintiffs' allegations as true that: (1) the suspect vehicle was parked in a shared driveway between two houses and (2) the suspect's girlfriend stated that she saw the suspect go into "1534 Garland Street," the statements create

a nexus between the place to be searched and the evidence (or suspect) sought, to create probable cause.

The Court finds, viewing the "totality of the circumstances," *Florida v. Harris*, 568 U.S. 237, 244 (2013), through the "lens of common sense," as the Supreme Court has instructed, *id.* at 248, that the search warrant affidavit at issue by Defendant Baxter provided a sufficient basis for probable cause to justify the search at 1534 Garland Street. Plaintiffs' selective, out-of-context reading of parts of the affidavit is contradicted by a reading of the affidavit as a whole. In this case, taking Plaintiffs' allegations as true, Officer Baxter did not include a false statement in the search warrant affidavit or intentionally omit material information. Further, once a police officer possesses facts sufficient to establish probable cause, the officer need not conduct any further investigation. *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988); *see also Dodd v. Simmons*, 655 F. App'x 322, 327 (6th Cir. 2016) (noting that it is well established that "a police officer has no duty to search for exculpatory facts if the facts within the officer's knowledge establish probable cause").[4]

---

[4] The caselaw Plaintiffs cite in their Response brief is distinguishable. In those cases, the plaintiffs alleged or evidence showed that the information provided to the judge reviewing the request for the warrant was materially false. *See, e.g., Hill v. McIntyre*, 884 F.2d 271, 276 (6th Cir. 1989) (informant gave ambiguous description of house to be searched, with no address, and the court found a question of fact exists as to whether the police officer provided false information or lied regarding the degree of

Accordingly, viewing the search warrant on the "totality of the circumstances," as the Court must, the Court finds that the search warrant was supported by probable cause. The Court therefore dismisses Count I of Plaintiffs' Complaint.[5]

---

care with which he sought out the house to be searched, or had been reckless in selecting the house, when the house had only four of seven key features included in the informant's description); *Williams v. City of Detroit*, 843 F. Supp. 1183, 1185-86 (question of fact remains regarding officer's statements in search warrant affidavit, given the fact that the officer never observed the informant go inside the residence at issue, contrary to what he asserted in his affidavit, and the false identification of the house was material); *Walker v. Louisville/Jefferson Cnty. Metro Gov't*, 583 F. Supp. 3d 887, 905 (W.D. Ky. 2022) (plaintiff plausibly alleged that officer "deliberately lied" and submitted an affidavit to the judge with knowledge of a false statement where plaintiff alleged that the officer stated in his affidavit that he personally verified the residence to be searched "though Shively PD," but the officer "never spoke to Shively PD").

[5] The Court further finds that Defendants are entitled to qualified immunity on Count I, because (1) Plaintiffs fail to properly allege a constitutional violation (as stated above), and (2) Plaintiffs fail to show that Defendants violated Plaintiffs' clearly established constitutional rights, as "[p]olice officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll Cnty., Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989); *see also Bailey*, 860 F.3d at 385 ("Police officers normally receive qualified immunity if they rely on a judicially secured warrant") (citation omitted).

23

**B.      Fourth Amendment – Manner of Execution of the Search Warrant: Unreasonable Search (Count II), False Imprisonment (Count III), and Excessive Force (Count IV)**

Because the Court finds, above, that the search warrant is supported by probable cause, Plaintiffs' three related Fourth Amendment claims of unreasonable search (Count II), false imprisonment (Count III), and excessive force (Count IV), will be examined in the context of a properly secured search warrant that was based on probable cause.

"To satisfy the [Fourth Amendment's] Reasonableness Clause, officers not only must obtain a valid warrant but ... must conduct the[ir] search in a reasonable manner." *Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433, 445 (6th Cir. 2006) (en banc) (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)). "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). Accordingly, where a plaintiff brings a § 1983 claim based on the unreasonable manner in which a warrant was executed, they can survive dismissal if they have plausibly alleged facts from which a jury could conclude that the manner of the search was not "reasonably necessary to effectively execute [the] ... warrant." *Hill*, 884 F.2d at 278.

24

Counts II, III, and IV in Plaintiffs' Complaint are each based on the manner in which the search warrant was executed by Defendants. Plaintiffs allege in Count II that Defendants executed the search warrant in a constitutionally unreasonable manner, allege in Count III that Defendants "falsely imprisoned" Plaintiffs when executing the warrant, and allege in Count IV that Defendants used excessive force in executing the warrant.

### 1.    Fourth Amendment – Manner of Execution of the Search Warrant: Unreasonable Search (Count II)

Plaintiffs allege in Count II of their Complaint that the search warrant was executed by Defendants in an unreasonable manner for five reasons: (1) the warrant was executed in the evening by officers in "SWAT-type gear;" (2) the officers failed to knock and announce their presence; (3) the officers failed to identify themselves as police officers; (4) the officers failed to provide Plaintiffs with a copy of the search warrant; and (5) the officers seized and held Plaintiffs at gunpoint and "terroriz[ed]" them after it was obvious that they were not the people Defendants were looking for. (ECF No. 2, Compl. ¶ 60.)

Defendants argue in their motion to dismiss that, even accepting Plaintiffs' allegations with regard to allegations (1), (4) and (5) as true, Plaintiffs fail to plead an unreasonable execution of the search warrant in violation of the Fourth

Amendment. (ECF No. 25, Defs.' Mot., PageID.174-76.) Defendants agree that the search warrant was executed in the evening, as part of the ongoing murder investigation, which included execution of multiple warrants at multiple locations that same day, and that "time was of the essence" because "a [second] suspect and the murder weapons (and other potential evidence) were still outstanding." (*Id.* PageID.174-75.) Defendants also agree that the Defendant officers wore tactical clothing, which Defendants contend is not unreasonable under the circumstances. (*Id.*) The Court agrees that Plaintiffs' complaints about a nighttime search and the officers' tactical clothing fails to state a claim for a constitutionally unreasonable search in this case where Defendants executed the valid search warrant as part of an ongoing murder investigation and the search for a murder suspect and weapons.

Defendants further contend that the Fourth Amendment does not require the executing officer to present a copy of the search warrant to the property owner before conducting the search, and point out that, in any event, Plaintiffs concede that the search warrant at issue in this case was filed under seal. (*Id.* PageID.175 (citing *United States v. Grubbs*, 547 U.S. 90, 99 (2006), and ECF No. 2, Compl. ¶ 30.) The United States Supreme Court in *Grubbs* did state that neither the Fourth Amendment

nor Fed. R. Crim. P. 41 (which does not appear to apply here)[6] require the executing officer to present the property owner a copy of the warrant "at the outset of the search, or indeed until the search has ended[.]" *Grubbs*, 547 U.S. at 98-99. However, in *Grubbs*, the executing agents presented a copy of the warrant to the defendant 30 minutes into the search. *Id.* In *Groh v. Ramierz*, 540 U.S. 551 (2004), the Supreme Court expressly left open the question of whether it would be unreasonable under the Fourth Amendment for an executing officer to refuse to produce a warrant at the outset of a search upon the request of an occupant. *Id.* at 562 n.5 ("Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present."). The Sixth Circuit Court of Appeals has stated, since *Grubbs*, that "the decision of officers not to present an incorporated affidavit to the occupant upon request may be a relevant factor in determining the reasonableness of a search, [although] it does not make a warrant-supported search a warrantless one." *Baranski*, 452 F.3d at 443; *see also Greer v. City of Highland Park, Mich.*,

---

[6] *See United States v. Marales*, 10 F. App'x 268, 269 (6th Cir. 2001) ("When federal officers are not involved in obtaining or executing a challenged search warrant, Rule 41(a) does not apply.") (citing *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999); *United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992)).

27

884 F.3d 310, 317 (6th Cir. 2018) (finding that plaintiffs' claims that they repeatedly asked to see the warrant and the officers refused, and that the officers failed to leave a copy of the warrant at the plaintiffs' home after the search concluded, further support plaintiffs' claim that the defendants conducted the search of plaintiffs' home in an unreasonable manner).

In this case, no copies of the search warrant or affidavit were left at the Plaintiffs' residence because the state court had ordered the search warrant sealed "to protect an ongoing investigation or the privacy or safety of a victim or witness." (ECF No. 25-2, Search Warrant, PageID.202.) Given this, the Court agrees that even accepting Plaintiffs' assertions with regard to their allegations (1) that the warrant was executed in the evening by officers in "SWAT-type gear," and (4) that the officers failed to provide Plaintiffs with a copy of the search warrant, as true, these allegations fail to allege an unreasonable execution of the search warrant in violation of the Fourth Amendment.[7]

However, Plaintiffs' allegations that Defendants failed to "knock and announce" before breaking down the front door of their residence, "or, in the

---

[7] The Court will address Plaintiffs' allegations that the officers seized and held Plaintiffs at gunpoint and "terroriz[ed]" them after it was obvious that they were not the people Defendants were looking for when addressing Plaintiffs' claims for false imprisonment (Count III) and excessive force (Count IV) *infra*.

28

alternative, not announcing themselves in a manner reasonably calculated to be heard and not allowing a sufficient time for response," is a different matter. (See ECF No. 2, Compl. ¶ 60.) Plaintiffs contend that this failure to knock and announce violated their Fourth Amendment rights.

Defendants argue in their motion to dismiss that the dash cam video "blatantly contradicts Plaintiffs' allegations that the ES Team failed to knock and announce or identify themselves as police officers." (ECF No. 25, Defs.' Mot., PageID.175, citing Ex. C, Dash Cam Video.) Plaintiffs, on the other hand, contend that the dash cam video evidence does not contradict their allegations, as "the sound of the battering ram [on the video] is simultaneous to any announcements, either from the street or from the Defendant officers, approximately 27 seconds after the officers can be seen exiting the police vehicle and running up to Plaintiffs' home." (ECF No. 34, Pls.' Resp., fn.15, PageID.367.)

The Fourth Amendment generally requires officers executing a search warrant to "knock and announce that they are seeking entry into a home and then wait for a reasonable amount of time before entering." *Greer*, 884 F.3d at 315 (citing *United States v. Spikes*, 158 F.3d 913, 925-26 (6th Cir. 1998)). As the Sixth Circuit Court of Appeals has explained:

> Officers must take two steps to satisfy the knock-and-announce rule.
> First police officers must announce their presence and authority before
> entering a residence to execute a warrant, absent exigent circumstances.
> Second, after announcement, officers are required to wait a "reasonable
> period of time" before forcing entry.

*James v. City of Detroit, Michigan*, Nos. 20-1805/21-1053, 2021 WL 5463778, at

*5 (6th Cir. Nov. 23, 2021) (internal and end citations omitted). And nighttime

searches are "more intrusive than searches conducted during the day," requiring a

longer waiting time before officers may enter. *Greer*, 884 F.3d at 317 (quoting

*Yanez-Marquez v. Lynch*, 789 F.3d 434, 465 (4th Cir. 2015)) (internal quotation

marks omitted); *see also id.* at 315 ("Furthermore, when officers execute a warrant

at night, 'the length of time the officers should wait increases.'") (quoting *Spikes*,

158 F.3d at 927). This well-established rule protects important interests:

> including 1) reducing the potential for violence to both the police
> officers and the occupants of the house into which entry is sought; 2)
> curbing the needless destruction of private property; and 3) protecting
> the individual's right to privacy in his or her house.

*United States v. Dice*, 200 F.3d 978, 982 (6th Cir. 2000) (citing *United States v.*

*Bates*, 84 F.3d 790, 794 (6th Cir. 1996)), *abrogated on other grounds by Hudson v.*

*Michigan*, 547 U.S. 586 (2006). Indeed, the United States Supreme Court has stated

that it is "difficult to imagine a more severe invasion of privacy than the nighttime

intrusion into a private home." *Jones v. United States*, 357 U.S. 493, 498 (1958).

30

Here, Plaintiffs' allegations in their Complaint that the ES Team failed to knock and announce before breaking down the front door of their residence, accepted as true, is sufficient to state a claim for a Fourth Amendment violation at this early stage of these proceedings. *See Greer*, 884 F.3d at 316 (finding that plaintiffs "have sufficiently alleged a violation of their Fourth Amendment rights pursuant to the knock-and-announce rule" when they allege that "the officers did not knock or announce but instead immediately blew down their front door with a shotgun" "at approximately 4:00 a.m.").

The Court may consider uncontroverted video evidence in ruling on a motion to dismiss, but only to the degree that the video is clear and it blatantly contradicts or utterly discredits the plaintiff's version of events. *Bell v. City of Southfield, Mich.*, 37 F.4th 362, 364 (6th Cir. 2022) (considering a video of the incident for a Rule 12 motion where the video was part of the record and the complaint implicitly relied on the video because it recounted facts that could only be known by watching the video) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Bailey*, 860 F.3d at 386 (considering a video of the incident on a Rule 12 motion because the plaintiff "mentions it throughout his complaint"). As the Sixth Circuit Court of Appeals explained, "if the indisputable video evidence contradicts [the plaintiff's] pleadings,

31

his allegations are implausible." *Bell*, 37 F.4th at 364. Otherwise, the Court must accept the plaintiff's version of events as true. *Id.*

Plaintiffs concede in their Response brief that the dash cam video, and three other exhibits attached to Defendants' motion to dismiss, are "arguably appropriate" for consideration by the Court at this time. (ECF No. 34, Pls.' Resp. fn.1, PageID.353.) The Court agrees and will consider this video evidence. However, even considering the dash cam video, the Court finds, upon its review of the video, that the video does not "blatantly contradict" or "utterly discredit" the entirety of Plaintiffs' version of events as alleged in the Complaint. While shouts of "State Police. Search Warrant" can be heard, as can multiple announcements of "State Police. Search Warrant" via a PA system, and thus Defendants did identify themselves as police officers, it is not clear from the Court's review of the video at which point during the video that Defendants entered Plaintiffs' house with the battering ram, and thus when they "knocked and announced" and whether they "wait[ed] a reasonable amount of time before entering," even given that this is a nighttime execution of the search warrant looking for a murder suspect and weapons. *See Greer*, 884 F.3d at 315. (*See* ECF No. 25-4, Dash Cam Video.)

Thus, accepting Plaintiffs' version of the events as true, and taking the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have stated a

claim under the Fourth Amendment for an unreasonable search when they allege that

Defendants failed to knock and announce before entering Plaintiffs' home.

Moreover, the Court finds that Defendants are not entitled to qualified

immunity with regard to this claim at this time, because "it is clearly established law

that the [F]ourth [A]mendment forbids the unannounced, forcible entry of a dwelling

absent exigent circumstances." *Greer*, 884 F.3d at 316-17 (quoting *Hall v. Shipley*,

932 F.2d 1147, 1151 (6th Cir. 1991)).[8]

---

[8] "Exigent circumstances may include the following situations: '(1) there would be a danger to the officer; (2) there would be danger of flight or destruction of evidence; (3) a victim or some other person is in peril; or (4) it would be a useless gesture such as when the person within already knew the officer's authority and purpose.'" *Greer*, 884 F.3d at 317 (quoting *United States v. Pelayo-Landero*, 285 F.3d 491, 498 (6th Cir. 2002)). Defendants did not argue in their motion to dismiss that any "exigent circumstances" existed in this case that would excuse the "knock-and-announce" requirement, but did argue for the first time at oral argument that a failure to knock and announce would be so excused. However, when a party fails to raise an issue in its brief and instead raises an issue for the first time at oral argument, courts have found that such an argument is waived. *Roberts v. Pincipi*, 283 F. App'x 325, 332 n.3 (6th Cir. 2008) ("Because counsel raised the issue only at oral argument, however, we decline to review it."); *Lane v. LaFollette, Tenn.*, 490 F.3d 410, 420 (6th Cir. 2007) (issue waived by first raising it at oral argument); *Keathley v. Grange Ins. Co. of Mich.*, No. 15-cv-11888, 2019 WL 423838, at *7 n.3 (E.D. Mich. Feb. 4, 2019) (declining to consider "hastily and belatedly made" argument made for first time at oral argument); *Probst v. Cent. Ohio Youth Ctr.*, 511 F. Supp. 2d 862, 81 (S.D. Ohio 2007) ("It is well established that a moving party may not raise an issue for the first time in its reply brief or at oral argument."). The Court finds Defendants' "exigent circumstances" argument, made for the first time at oral argument, waived for purposes of Defendants' motion to dismiss.

Therefore, accepting Plaintiffs' allegations as true, and viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly alleged in Count II of their Complaint that the manner in which the search warrant was executed was unreasonable under the Fourth Amendment with respect to Defendants' alleged failure to knock and announce and allow a sufficient time before breaking the front door open. (ECF No. 2, Compl. ¶ 60.)

Accordingly, Defendants' motion to dismiss Count II of Plaintiffs' Complaint is denied.

### 2.       Fourth Amendment – False Imprisonment (Count III)

Plaintiffs allege that, during the execution of the search warrant, Defendants unlawfully and unreasonably held them in their home at gunpoint for an hour, and refused to allow them to communicate with family or friends. (ECF No. 2, Compl. ¶¶ 41-45.) Plaintiffs complain in Count III of their Complaint that Defendants "[s]eiz[ed] Plaintiffs at gunpoint in the absence of probable cause," (*id.* ¶ 60), and "[o]nce [they] were detained in their home without probable cause, Defendants intentionally falsely imprisoned them," depriving them of their "personal liberty and freedom of movement, using threat of physical force." (*Id.* ¶ 64.)

Defendants contend that the United States Supreme Court defines false imprisonment as "detention without lawful process," *Wallace v. Kato*, 549 U.S. 384,

389 (2007), and thus a temporary detention during the execution of a valid search warrant does not violate the Fourth Amendment. (ECF No. 25, Defs.' Mot., PageID.176.) Defendants assert that it is well settled that "an officer's authority to detain incident to a search is categorical and does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." (*Id.,* quoting *Muehler v. Mena*, 544 U.S. 93, 95 (2005) (internal citations and quotation marks omitted).) Defendants contend that Plaintiffs only allege that they were confined in their home during the execution of the search warrant, and because a valid warrant existed to search the premises and Plaintiffs were occupants of the home at the time of the search, their detention for the duration of the search was reasonable, and Plaintiffs' claim must be dismissed. (*Id.*)

Plaintiffs argue in their Response brief, with regard to this claim, only that their "prolonged detention" during the execution of the search warrant was unreasonable and violated their Fourth Amendment rights. (ECF No. 34, Pls.' Resp. PageID.370.)

In *Michigan v. Summers,* 452 U.S. 692 (1981), the United States Supreme Court held that officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted." *Id.* at 705 The Supreme Court explained that such detentions are appropriate because the

35

character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial. *Id.* at 701-05. The Supreme Court stated that the detention of an occupant is "surely less intrusive than the search itself," and the presence of a warrant assures that a neutral magistrate has determined that probable cause exists to search the home. *Id.* at 701. Against this incremental intrusion, the Supreme Court posited three legitimate law enforcement interests that provide substantial justification for detaining an occupant: "preventing flight in the event that incriminating evidence is found;" "minimizing the risk of harm to the officers;" and, facilitating "the orderly completion of the search," as detainees' "self-interest may induce them to open locked doors or locked containers to avoid the use of force." *Id.* at 702-03.

The United States Supreme Court later held in *Muehler v. Mena*, 544 U.S. 93 (2005), that "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Id.* at 98 (quoting *Summers*, 452 U.S. at 705, n.19). In *Muehler*, police officers executed a search warrant of a house seeking weapons and evidence of gang membership in the wake of a drive-by shooting. *Id.* at 95-96. The Supreme Court reasoned in that case that "Mena's detention for the duration of the search [for two to three hours, in handcuffs] was reasonable under

*Summers* because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search." *Id.* at 98, 102.

This Court has found, *supra*, that the search warrant in this case was supported by probable cause. The Court therefore finds that the fact of Plaintiffs' detention during the execution of the search was, under *Summers* and *Muehler*, permissible because a warrant existed to search 1534 Garland Street, and Plaintiffs were occupants of that address at the time of the search. *See Muehler*, 544 U.S. at 98; *Summers*, 452 U.S. at 705; *see also Wolgast v. Richards*, 389 F. App'x 494, 501 (6th Cir. 2010) (stating that the presence of probable cause defeats Fourth Amendment false imprisonment and unlawful arrest claims) (collecting cases). Indeed, *Summers* makes clear that when a neutral magistrate has determined police have probable cause to believe contraband exists, "[t]he connection of an occupant to [a] home" alone "justifies a detention of that occupant." *Summers*, 452 U.S. at 703-04.

Therefore, because the Court finds, in Count I *supra*, that the search warrant was supported by probable cause, the Court grants Defendants' motion to dismiss Plaintiffs' claim in Count III of their Complaint for Fourth Amendment false imprisonment.[9]

_____

[9] Defendants further argue that they are entitled to qualified immunity on this claim, arguing that it is clearly established that "law enforcement officials have a limited

### 3.    Fourth Amendment – Excessive Force (Count IV)

Plaintiffs allege in Count IV of their Complaint that, during the execution of the search warrant, Defendants violated Plaintiffs' constitutional protections against excessive force by: (1) forcibly breaking in the front door of the house without knocking or announcing; and (2) pointing guns at Plaintiffs. (ECF No. 2, Compl. ¶ 69.) Plaintiffs further allege earlier in their Complaint that:

- Plaintiff Colston had just stepped out of the shower and was allowed, at gunpoint, to only wrap herself "in any cover she could get her hands on;"

- Colston was only permitted to get her three-year-old son, S.W., while Defendants "follow[ed] her closely and while armed;"

- Plaintiffs were ordered to the living room where they remained, at gunpoint, with no explanation; and

---

authority to detain occupants of a premises while a proper search if being conducted." (ECF No. 25, Defs.' Mot., PageID.185-86, quoting *Duncan v. Jackson*, 243 F. App'x 890, 896 (6th Cir. 2007) (quotation and internal quotation marks omitted).) The Court finds that Plaintiffs have failed to meet their burden to show that their detention during the execution of the search warrant violates a clearly established right. *See Cunningham*, 994 F.3d at 765. Plaintiffs wholly fail to address this issue in their Response brief, only broadly asserting that they "have asserted facts to defeat a qualified immunity defense regarding the execution of the warrant, the use of excessive force and the violation of the equal protection clause." (ECF No. 34, Pls.' Resp., PageID.375-76, citing Complaint.) Once a defendant raises the qualified immunity defense, the plaintiff "bears the burden of showing that [the] defendant[] [is] not entitled to qualified immunity," *Gavitt*, 835 F.3d at 641, including the burden to show that the right allegedly violated was clearly established. *Cunningham*, 994 F.3d at 765. Plaintiffs have not met their burden here.

- Defendants barged into ten-year-old minor Plaintiff D.W.'s bedroom room, and woke him up, "brandishing weapons in his face."

(*Id.* ¶¶ 40-45.)

In executing a search warrant, officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search. *Rettele*, 550 U.S. at 614 (citations omitted) (explaining that "[u]nreasonable actions include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time."). "Inherent in [the court's] authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." *Muehler*, 544 U.S. at 98-99 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

However, the use of excessive force in the execution of a search warrant constitutes a Fourth Amendment violation. *See Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (citing *Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009); *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008)). To determine whether a constitutional violation based on excessive force has occurred, the Court applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir.

39

2007)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396)).

Defendants argue that, assuming Plaintiffs' allegations are true (as required on a Rule 12(b)(6) motion to dismiss) – (1) forcibly breaking in the front door of the house without knocking or announcing; and (2) pointing guns at Plaintiffs – neither action Plaintiffs complain of constitutes excessive force in this case. (ECF No. 25, Defs.' Mot., PageID.177.) Defendants assert that it is well-settled that police have the authority to detain occupants of a residence while executing a search warrant for contraband, and that police are authorized to use some degree of physical coercion to effectuate the detention. (*Id.* citing *Summer*, 452 U.S. at 704 and *Muehler*, 544

40

U.S. at 98.) Defendants contend that, to be constitutional under the Fourth Amendment, an officer's use of force only needs to be reasonable under the circumstances. (*Id.* citing *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020).)

Defendants argue that although Plaintiffs' front door was damaged during the execution of the search warrant, the Supreme Court recognizes that "officers executing search warrants on occasion must damage property in order to perform their duty," *Dalia v. United States*, 441 U.S. 238, 258 (1979), and "*de minimis*" damage does not form the basis for a constitutional claim. *Streater v. Cox*, 336 F. App'x 470, 477 (6th Cir. 2009) (finding that officers' conduct in breaking of a lock on plaintiff's briefcase during the execution of a search warrant was *de minimis* and did not constitute a constitutional violation). (ECF No. 25, Defs.' Mot. PageID.178.) However, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful." *Ramirez*, 523, U.S. at 71. *See also Matthews v. Craige*, No. 1:16-CV-11680, 2016 WL 3522320, at *4 (E.D. Mich. June 28, 2016) (finding allegations that defendants "ransacked the residence, flipping over beds and pulling out dresser drawers" constituted *de miminis* damage that is not compensable); *Chumley v. Miami Cnty., Ohio*, No. 3:14-cv-16, 2015 WL 859570, at *10 (S.D. Ohio Feb. 27, 2015) (finding that plaintiff's claims that "the officers emptied the closets, dumped a coin collection

onto the bed, and left the house in disarray after the search … does not amount to a constitutional violation") (citations omitted); *Izquierdo v. Boldin*, No. 4:11CV08126, 2012 WL 2344611, at *3 (N.D. Ohio June 20, 2012) (finding that plaintiff's description of the damage as "a cut cable, a broken router, and evidence tape on his equipment" was *de minimis* and not a constitutional violation).

The Court finds, accepting Plaintiffs' allegations as true that Defendants broke down the front door of their residence to gain entry into the home, and "ransacked their home, pull[ing] clothes and personal items out of their closets and dressers," that the alleged damage to Plaintiffs' house was "*de minimis*" and thus does not constitute a constitutional violation. A "relevant consideration[]" in the excessive force inquiry is "the severity of the crime at issue," *Fox*, 489 F.3d at 236, and Defendants here were executing the search warrant in the context of a murder investigation and a search for a suspect and weapons.

Defendants further argue that the display/pointing of guns by Defendant officers during the execution of the search warrant was also reasonable under the circumstances because "a murder suspect and weapons were outstanding, [and] the display of Defendants' firearms to ensure their safety was reasonable under the circumstances." (ECF No. 25, Defs.' Mot., PageID.175-76, citing *Marcilis v. Township of Redford*, 693 F.3d, 589, 599 (6th Cir. 2012) ("officers conducting

42

residential searches may detain individuals in handcuffs and display firearms where the officers have a justifiable fear of personal safety").) Defendants recognize that, in hindsight, Plaintiffs were not a threat, but recite the settled law that the reasonableness of an officer's conduct must be judged from the perspective of a reasonable officer on the scene, rather than with hindsight. (*Id.* citing *Ashford*, 951 F.3d at 801.) *See also Wright v. City of Euclid, Ohio*, 962 F.3d 852, 865 (6th Cir. 2020) ("This inquiry assesses 'reasonableness at the moment' of the use of force, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'") (quoting *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015)).

The United States Supreme Court has stated that "[i]nherent in *Summers'* authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." *Muehler*, 544 U.S. at 98-99 (citing *Graham*, 490 U.S. at 396). The Court continued that "the risk of harm to officers and occupants is minimized 'if the officers routinely exercise unquestioned command of the situation.'" *Id.* at 99 (citing *Summers*, 452 U.S. at 703.)

The Court recognizes that pointing a gun at an individual under some circumstances can constitute excessive force under the Fourth Amendment. *Compare Binay*, 601 F.3d at 650 (recognizing that pointing a gun at an individual

43

can constitute excessive force under the Fourth Amendment); *Vanderhoef v. Dixon,* 938 F.3d 271, 276 (6th Cir. 2019) (noting that an "officer's use of excessive force violates the Fourth Amendment" and concluding the defendant officer in that case "was unreasonable in pointing his gun at plaintiff's head and holding him at gunpoint for approximately two minutes"); *Wright*, 962 F.3d at 870 (brandishing a firearm without a justifiable fear of fleeing or dangerousness was unreasonable and could constitute excessive force in violation of Fourth Amendment rights.); *with Taylor v. City of Detroit*, No. 05-cv-70489, 2007 WL 201010, at *5-6 (E.D. Mich. Jan. 23, 2007) (plaintiff's claims that officers shined a light in her eyes immediately upon entering the apartment, pointed a gun at her head, and then handcuffed her in her night-clothes, failed to state a claim of unreasonable execution of a search warrant); *Battiste v. Rojeski*, 257 F. Supp. 2d 957, 960 (E.D. Mich. 2003) (concluding it was "manifestly reasonable" for police officers investigating violent felonies with the use of a residential search warrant for firearms to open the door, yell at the occupant and knock her to the ground, pull her to a staircase and place a knee on her back, handcuff her for five minutes, and make her sit on a couch in only her nightgown while "at all times guns were pointed at her and she was held against her will").

The Court finds, accepting all of Plaintiffs' allegations as true and drawing all reasonable inferences in favor of Plaintiffs, that Plaintiffs have failed to state a claim

of excessive force in this case. The relevant question is whether the amount of force that the officers used to secure and detain Plaintiffs was objectively reasonable from the perspective of a reasonable officer on the scene, given the circumstances of this search. *Fox*, 489 F.3d at 236. Although, in hindsight, Plaintiffs were not a threat, assessing the reasonableness of the Defendant officers' conduct from the perspective of a reasonable officer on the scene, the alleged pointing of weapons at Plaintiffs during the execution of the search warrant, in connection with an ongoing murder investigation with a suspect and weapons outstanding, is not unreasonable under the Fourth Amendment. Plaintiffs have therefore failed to state a claim of excessive force, and this claim is dismissed. The Court also notes that Plaintiffs have not alleged that they were handcuffed or arrested.

Moreover, even if Plaintiffs had sufficiently pleaded facts to support an excessive force claim, Defendants assert the defense of qualified immunity, stating that "it is clearly established that police officers may use reasonable force to effectuate that detention, including pointing of weapons at a detainee." (ECF No. 25, Defs.' Mot., PageID.186.) As discussed above, qualified immunity applies to government officials when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. With an excessive force claim, qualified immunity looks

to "the objective reasonableness of an official's conduct." *Id.* It is a fact-intensive inquiry. The Court asks "whether the right was clearly established … in light of the specific context of the case." *Scott*, 550 U.S. at 377.

In response to Defendants' qualified immunity defense, Plaintiffs argue only that they "have asserted facts to defeat a qualified immunity defense regarding the execution of the warrant, [and] the use of excessive force[.]" (ECF No. 34, Pls.' Resp., PageID.375-76, citing Complaint.) Plaintiffs, however, offer no cases establishing that Defendants' conduct in this case violated clearly established rights. Except in an "obvious" circumstance, it is not enough for a plaintiff to offer cases that merely stand for the "general proposition" that the Fourth Amendment bars the use of excessive force. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). Instead, when it comes to excessive force, the Supreme Court has repeatedly stated that specific cases are "especially important." *See, e.g.*, *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11-12 (2021) (per curiam); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018) (per curiam). The unlawfulness of the officer's acts

46

"must be so well defined" that no reasonable officer would doubt it. *Bond*, 142 S. Ct. at 11 (citation omitted).

The Court finds that Plaintiffs have failed to meet their burden, once Defendants raised the defense of qualified immunity, to show that Defendants' actions *in this case* violated clearly established rights. *See Rivas-Villegas*, 142 S. Ct. at 8 ("[T]o show a violation of clearly established law, Cortesluna must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful. Cortesluna has not done so" because he did not identify "any Supreme Court case that addresses facts like the ones at issue here."). Accepting Plaintiffs' allegations as true, the Court cannot say that a reasonable officer, under the circumstances of this case, would have known that his actions in executing the search warrant on Plaintiffs' home, in connection with a search for a murder suspect and weapons, in the manner alleged violated Plaintiffs' Fourth Amendment rights. Accordingly, Defendants are entitled to qualified immunity on Plaintiffs' Fourth Amendment excessive force claim.

## C.    Equal Protection (Count V)

Plaintiffs allege that various Defendant officers violated Plaintiffs' Fourteenth Amendment right to equal protection of the law by discriminating against them on the basis of race. (ECF No. 2, Compl. Count V.) Plaintiffs contend that Defendants'

"deliberate disregard for and lack of attention to the truth regarding Plaintiffs was motivated by the fact that Plaintiffs are Black and live in a predominantly Black neighborhood," and that "[h]ad Plaintiffs been a white family, living in a predominantly white neighborhood, Defendants would have conducted a more thorough pre-raid investigation prior to obtaining a search warrant, and would have served the warrant with a considerably greater degree of care and caution than was employed by the Defendants with regard to these Black plaintiffs in this predominantly Black neighborhood." (*Id.* ¶¶ 79-80.)

Defendants argue in their motion to dismiss that Plaintiffs have not pleaded a cognizable equal protection claim because, although Plaintiffs are members of a protected class based on their race, Plaintiffs do not allege that Defendants intentionally discriminated against them based on their race. (ECF No. 25, Defs.' Mot. PageID.179-80.) Defendants contend that Plaintiffs do not allege that any of the MSP Defendants even knew of Plaintiffs' race prior to the execution of the search warrant, and Plaintiffs instead fault Defendants for not doing more of an investigation to determine who lived in their residence. (*Id.*) Defendants further argue that Plaintiffs fail to allege that they were treated differently than similarly situated persons of another race under similar circumstances as in this case. (*Id.*)

Plaintiffs respond that the Complaint "alleges the underlying investigation was careless in ways that would never have occurred had the Plaintiffs not been a Black family," and that they "intend – with the benefit of discovery – to employ relevant statistical evidence of disparate treatment" to prove their claim. (ECF No. 34, Pls.' Resp., PageID.371-72.)

Plaintiffs do not specify what more Defendants could have done, and the fact that the suspect lived/stayed in that neighborhood undermines Plaintiffs' claim that the officers picked that neighborhood to search because of the suspect's race.

"The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). Here, Plaintiffs allege that Defendants discriminated against them based upon their membership in a protected class – their race. "To succeed on such a claim, [a plaintiff] must adequately allege two threshold elements: (1) that the state 'treated the plaintiff disparately as compared to similarly situated persons'; and (2) that 'such disparate treatment … targets a suspect class.'" *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *7 (6th Cir. Aug. 18, 2022) (quoting *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)).

49

"An officer's discriminatory motivation for undertaking a course of action can give rise to an equal protection claim, even where an officer has sufficient objective indicia of suspicion to justify his actions under the Fourth Amendment." *Valdez v. United States*, 58 F. Supp. 3d 795, 823 (W.D. Mich. 2014) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). "The Constitution prohibits racial targeting in law enforcement investigations, regardless of whether an encounter was lawful under the Fourth Amendment." *Id.* (internal quotation marks omitted) (quoting *Farm Labor Org. Comm. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 542 (6th Cir. 2002)).

The Court finds, accepting Plaintiffs' allegations as true, that Plaintiffs fail to adequately plead an equal protection claim because, although Plaintiffs plead they are members of a protected class, Plaintiffs' Complaint does not allege, or include sufficient factual allegations that infer, intentional discrimination by Defendants or disparate treatment. *See Reynolds*, 2022 WL 3500191, at *7 (affirming dismissal of plaintiff's equal protection claim because "the allegations did not identify a similarly situated Caucasian person or a case comparable to Reynolds's case"); *Kuerbitz v. Meisner*, No. 17-2284, 2018 WL 5310762, at *11-12 (6th Cir. July 11, 2018) (equal protection claim properly dismissed where plaintiff "alleges no facts to support the inference that the defendants [in taking the action alleged] intentionally discriminated against him because of his membership in a protected class";

"[b]ecause conclusory allegations of unconstitutional conduct without specific factual allegations are insufficient to state an equal protection claim, this claim was subject to dismissal"). Bare assertions and conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680.

Here, accepting Plaintiffs' allegations as true, there is no allegation in Plaintiffs' Complaint that Defendants knew, prior to the execution of the search warrant, that Plaintiffs were, or were not, Black, or that Defendants otherwise intentionally targeted or discriminated against Plaintiffs based on their race. Defendants were led to Plaintiffs' residence by an apparently cooperating witness, and corroborated by the subject vehicle parked in a driveway shared by that residence. There are no factual allegations in Plaintiffs' Complaint that the search of Plaintiffs house was motivated because "Plaintiffs are Black and live in a predominantly Black neighborhood." Plaintiffs thus have not alleged anything beyond conclusions and speculation that Defendants were motivated by a discriminatory purpose in the execution of the search warrant in this case.

Further, Plaintiffs' Complaint fails to identify anyone of a different race similarly situated to Plaintiffs who received more favorable treatment, and "[c]onclusory allegations that a hypothetical Caucasian comparator would have

received more favorable treatment are not entitled to an assumption of truth." *Reynolds*, 2022 WL 3500191, at \*7.

Finally, Plaintiffs' argument in their Response brief that they intend to seek discovery to prove their equal protection claim fails, because a plaintiff is not entitled to discovery to find facts necessary to plead a sufficient claim. *See Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 711 (E.D. Mich. 2021) ("[P]leadings are not placeholders while a party pursues discovery of wrongdoing. Indeed, 'only a complaint that states a plausible claim for relief survives a motion to dismiss' and thus entitles a counter-plaintiff to 'unlock the doors of discovery.'") (quoting *Iqbal*, 556 U.S. at 678-79). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678.) "A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment." *Kolley*, 725 F.3d at 587 (citing *Twombly*, 550 U.S. at 558-59); *see also Iqbal*, 556 U.S. at 686 (holding that a plaintiff who had filed a deficient complaint was "not entitled to discovery" to construct a plausible complaint); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (stating that the purpose of a motion

to dismiss "is to enable the defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery").

Because Plaintiffs' Complaint fails to state a plausible claim upon which relief may be granted on Plaintiffs' Equal Protection claim in Count V, they are not entitled to proceed to the discovery process in an attempt to state such a claim. *See Iqbal*, 556 U.S. at 678-79 (directing district courts not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Plaintiffs' Equal Protection claim therefore is dismissed for failure to state a claim.

### D. Plaintiffs' State Law Claims (Counts VI, VII and VIII)

#### 1. Governmental Immunity

Defendants argue in their motion to dismiss that they are entitled to governmental immunity under Michigan law for Plaintiffs' state law intentional tort claims because Michigan law grants police officers governmental immunity when performing discretionary acts in good faith, within the scope of their employment. (ECF No. 25, Defs.' Mot., PageID.186-87.)

Plaintiffs argue in Response that Defendants are not entitled to governmental immunity because Plaintiffs have plausibly pleaded both intentional torts and gross negligence, which they assert are both exceptions to immunity under the Michigan

Government Tort Liability Act, Mich. Comp. Laws § 691.1407, *et seq.* (ECF No. 34, Pls.' Resp., PageID.376-77.)

Under Michigan law, individual defendants sued for assault, battery, false imprisonment, false arrest, or other similar intentional torts such as intentional infliction of emotional distress and trespass, allegedly committed while an employee of the government, would have the benefit of a limited state law immunity. To qualify for governmental immunity under Michigan state law for intentional torts, a governmental employee must establish that: (1) the employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed he was acting, within the scope of his authority, (2) the employee undertook the challenged acts in good faith or without malice, and (3) the acts were discretionary, rather than ministerial, in nature. *Odom v. Wayne Cnty.,* 482 Mich. 459, 480 (2008) (citing *Ross v. Consumers Power Co.,* 420 Mich. 567, 633-34 (1984) (per curiam)).

> **a.    Defendants were acting within the scope of their authority and were engaged in discretionary acts (prongs 1 and 3)**

Here, the Court finds that the first and third prongs of the governmental immunity test have been readily met.

Plaintiffs affirmatively plead that Defendants were acting within the scope of their authority when they obtained and executed the search warrant on Plaintiffs' residence. (ECF No. 2, Compl. ¶¶ 85, 94, 103.) Thus, the first prong of the governmental immunity test is satisfied. *See Odom*, 482 Mich. at 480.

With regard to the third prong, "[d]iscretionary acts 'require personal deliberation, decision[,] and judgment.'" *Odom*, 482 Mich. at 476 (quoting *Ross*, 420 Mich. at 634). By contrast, "[m]inisterial acts 'constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice.'" *Id.* (quoting *Ross*, 420 Mich. at 634). "The execution of an act once a decision has been made is also ministerial in nature." *Id.*

Defendants contend that the investigatory police work challenged by Plaintiffs is discretionary, and that Defendants' actions "are the essence of the discretion and judgment regularly exercised by law enforcement officers." (ECF No. 25, Defs.' Mot., PageID.187.) Plaintiffs do not directly respond to this argument and thus have waived any opposition. *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 ("[U]nder the law of this circuit," the district court properly deemed claim waived where the plaintiff failed to response to the challenge to the claim in the defendant's motion); *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 737 (E.D.

Mich. 2013) (failure to respond to an argument in a dispositive motion "is grounds for the court to deem opposition waived").

Both the Michigan Supreme Court and the United States District Court for the Eastern District of Michigan have characterized police officers assessing probable cause as a discretionary act. *Odom*, 482 Mich. at 476 (stating that "[p]olice officers perform many discretionary acts each day," including when they determine "whether there is reasonable suspicion to investigate or probable cause to arrest"); *Fantroy v. Vann*, No. 14-13341, 2015 WL 5244342, at *9 (E.D. Mich. Sept. 8, 2015) ("Under Michigan law an officer's decisions regarding an arrest are considered both discretionary and within the scope of their authority."). Similarly, the Eastern District of Michigan has found that the execution of a search warrant "involves considerable discretion in terms of how to conduct the search, what efforts to undertake to effectuate the search, and judgment in determining when to conclude the search." *Pillow v. Henry*, No. 20-CV-11360, 2021 WL 3869906, at *6 (E.D. Mich. Aug. 27, 2021). The Court thus finds that Defendants' challenged acts were discretionary, not ministerial.

Accordingly, the Court finds that Defendants have established the first and third prongs of the governmental immunity analysis.

### b.      Good faith (prong 2)

A government employee must also establish that he acted "in good faith" to be entitled to governmental immunity. *Odom*, 482 Mich. at 480. Good faith "is subjective in nature." *Id.* at 481-82. The good-faith element "protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Id.* That malicious intent is defined as "conduct or a failure to act that was intended to harm the plaintiff ... [or] that shows such indifference to whether harm will result as to be equal to a willingness that harm will result." *Id.* at 475. In *Odom*, the Michigan Supreme Court states that "[a] police officer would be entitled to immunity under *Ross* if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken." *Odom*, 482 Mich. at 481.

Defendants argue that Plaintiffs have failed to allege any facts that, even if proven, would show an intent to harm by Defendants. (ECF No. 25, Defs.' Mot., PageID.187.) Rather, Defendants assert that they were "misled by a witness but did not act maliciously." (*Id.*) Plaintiffs argue in response that they have pleaded that Defendants' actions were not taken in good faith, but rather dishonestly, with malice. (ECF No. 34, Pls.' Resp., PageID.376-77.)

57

The Court finds, accepting Plaintiffs' version of the facts surrounding the execution of the search warrant as true, that Plaintiffs have failed to sufficiently allege that Defendants displayed a wanton or reckless disregard for Plaintiffs' rights that was tantamount to bad faith. *See Odom*, 482 Mich. at 475 ("'[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or ... such indifference to whether harm will result as to be the equivalent of a willingness that it does.'") (quoting *Burnett v. City of Adrian,* 414 Mich. 448 (1982))). Rather, accepting Plaintiffs' well-pleaded allegations as true, Defendants had probable cause to search Plaintiffs' house, and they did not act with malice or reckless disregard for Plaintiffs' rights in the execution of that warrant.[10] Defendants are therefore entitled to governmental immunity from Plaintiffs' state law claims.

---

[10] Plaintiffs contend in their Response brief that they have pleaded gross negligence in avoidance of governmental immunity. (ECF No. 34, Pls.' Resp., PageID.377.) However, Plaintiffs have not pleaded a gross negligence claim in their Complaint (see ECF No. 2, Compl.), or even alleged the words "gross negligence," and this argument is rejected. Moreover, Plaintiffs "are barred from bringing gross negligence claims … if those claims are 'fully premised' on alleged intentional torts." *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 701 (6th Cir. 2018) (citation omitted); *see also Fantroy*, 2015 WL 5244342, at *4 ("Michigan law does not recognize 'gross negligence' as an independent cause of action where the underlying facts supports an intentional tort allegation"); *see also Harmon v. Harper*, No. 3:19-CV-823-CRS, 2020 WL 3013890, at *4 (W.D. Ky. June 4, 2020) ("A plaintiff cannot support a claim for negligence or gross negligence with the same factual allegations as a false arrest or malicious prosecution claim because it would allow the plaintiff to circumvent the 'higher standards' associated with those

However, even if the Court were to find that the Defendants do not have governmental immunity to Plaintiffs' intentional state law claims, those claims nevertheless fail as a matter of law, for the reasons that follow.

### 2.  Intentional Infliction of Emotional Distress (Count VI)

Plaintiffs allege in their Complaint that Defendants' actions in executing the search warrant on Plaintiffs' home "were completely and totally outside the bounds of acceptable behavior for any adult person living and functioning in this democratic and civilized society and, as such, were shocking, extreme and outrageous," and thus support a claim for intentional infliction of emotional distress. (ECF No. 2, Compl. Count VI.) Plaintiffs allege that while "Defendants' actions … were undertaken during the course of their employments, when they were acting or reasonably believed they were acting within the scope of their authority," Defendants' actions "were not undertaken in good faith but rather with malice, and Defendants are therefore not entitled to governmental immunity under state law." (*Id.* ¶ 85.) Plaintiffs do not otherwise more specifically allege, in Count VI, what conduct they allege to be extreme and outrageous, or "utterly intolerable in a civilized community."

---

intentional torts."). Because any gross negligence claim by Plaintiffs would be based on the same facts as their intentional tort claims, such a claim would be barred.

To establish the tort of intentional infliction of emotional distress under Michigan law, a plaintiff must show the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Lucas v. Awaad*,  299 Mich. App. 345, 359 (2013) (citation omitted). The threshold for showing extreme and outrageous conduct is high, and "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to liability for intentional infliction of emotional distress. *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 321 (2010). The Michigan Supreme Court has observed:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Roberts v. Auto-Owners Ins. Co.,* 422 Mich. 594, 602-03 (1985) (quoting the Restatement (Second) of Torts § 46, cmt. d). Whether the offending conduct is

extreme and outrageous is initially a question of law for the court. *VanVorous v. Burmeister*, 262 Mich. App. 467, 481 (2004), *overruled on other grounds by Odom v. Wayne Cnty.*,  482 Mich. 459 (2008).

Defendants argue in their motion to dismiss that Plaintiffs have failed to allege any facts that would support a claim for intentional infliction of emotional distress. (ECF 25, Defs.' Mot., PageID.180-81.) Defendants contend that they acted pursuant to a facially valid search warrant and Plaintiffs have "failed to allege facts that go 'beyond all possible bounds of decency.'" (*Id.*) Defendants assert that Michigan courts have held as a matter of law that an officer whose actions are based upon a valid warrant or who makes an arrest based on probable cause "cannot be liable for intentional infliction of emotional distress." (*Id.* citing *Walsh v. Taylor*, 263 Mich. App. 618, 634 (2004).)

Plaintiffs argue, briefly, in their Response that Defendants are liable for intentional infliction of emotional distress because of the way the search warrant was executed. (ECF No. 34, Pls.' Resp. PageID.372.) Specifically, Plaintiffs contend that they have pleaded facts showing "falsehood, brandishing guns in front of young children, forcing [Plaintiff] Colston out of the shower and refusing to allow her to dress, and much more." (*Id.*)

The Court finds, given the high threshold for establishing "extreme and outrageous conduct," that Plaintiffs fail to sufficiently plead a claim for intentional infliction of emotional distress. Defendants procured and executed a search warrant based on probable cause, and Plaintiffs have failed to plead any actions by Defendants that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Roberts*, 422 Mich. at 602-03.

In *McGrew v. Duncan*, the plaintiff argued that she suffered from intentional infliction of emotional distress when Defendants illegally broke down the front door of her home, slammed her to the ground, handcuffed her, ridiculed her weight, and seized her belongings. 333 F. Supp. 3d 730, 742 (E.D. Mich. 2018) (Hood, C.J.), *aff'd in part, appeal dism'd in part and remanded*, 937 F.3d 664 (6th Cir. 2019). The court held that the defendant police officer executing a search warrant did not commit intentional infliction of emotional distress against the plaintiff property owner. *Id.* at 743. The Court noted that during the search, the police officer handcuffed the homeowner and threw her on the ground, and while the homeowner was handcuffed on the ground, the police officer called her a "bitch," told her she "shouldn't be so fat" and told her, "if you don't shut your [f***ing] mouth I can blow your head off and nothing can be done." *Id.* The court held that "[w]hile [the

officer's] conduct is reprehensible, it does not rise to the level of extreme and outrageous." *Id.* (noting that plaintiff "has not alleged that the officer pointed a gun at her, or provided any other indication that the threat was serious" or "that the officer physically harmed her following the handcuffing"); *see also Burton v. City of Detroit, Mich.*, No. 22-1222, 2022 WL 17177323, at *5 (6th Cir. Nov. 23, 2022) (a finding of probable cause for plaintiff's arrest defeats his intentional infliction of emotional distress claim) (citing *Walsh*, 263 Mich. App. at 634-35).

Plaintiffs' factual allegations fall far short of a viable intentional infliction of emotional distress claim. The Court therefore finds that Plaintiffs fail to state a claim for intentional infliction of emotional distress, and that claim is dismissed.

### 3.    Trespass (Count VII)

Plaintiffs allege in Count VII of their Complaint that their home is their private property and that Defendants entered their home, without probable cause or any legal right or authorization or Plaintiffs' consent, which constituted an unlawful and unauthorized invasion of Plaintiffs' property. (ECF No. 2, Compl. ¶¶ 89-94.)

Under Michigan law, a trespass is "an unauthorized entry onto the private land of another." *Moher v. United States*, 875 F. Supp. 2d 739, 755 (W.D. Mich. 2012) (citing cases). "The trespasser must intend to enter or intrude on the plaintiff's land

or real property without authorization to do so." *Id.* If a defendant's intrusion is authorized by law, there is no trespass. *Id.*

Defendants argue that Plaintiffs fail to state a trespass claim under Michigan law because the valid search warrant in this case authorized Defendants to enter onto Plaintiffs' property. (ECF No. 25, Defs.' Mot., PageID.181.) Plaintiffs respond that, to the extent Defendants entered Plaintiffs' home without lawful authority or consent, they were trespassing, and that Plaintiffs have pleaded that Defendants intrusion into their home was unauthorized because the warrant supporting the search lacked probable cause. (ECF No. 34, Pls.' Resp., PageID.372-73.)

The Court found, *supra*, that the search warrant at issue in this case was supported by probable cause, and thus Defendants had authority to enter onto Plaintiffs' property. Accordingly, Plaintiffs fail to state a trespass claim against Defendants under Michigan law, and that claim is dismissed.

### 4.    False Imprisonment (Count VIII)

Finally, Plaintiffs assert a state law false imprisonment claim in Count VIII of their Complaint, alleging that Defendants forced Plaintiffs to remain in their home at gunpoint, "told Plaintiffs where they could or could not stand or sit, with the intention of confining them to a particular part of their home," and that Defendants "lacked probable cause to confine Plaintiffs." (ECF No. 2, Compl. ¶¶ 98-102.)

False imprisonment is "an unlawful restraint on a person's liberty or freedom of movement." *Valdez*, 58 F. Supp. 3d at 829 (quoting *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003)). The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, (3) the person confined is conscious of his confinement, and (4) the imprisonment was false – without right or authority to confine. *Moore v. City of Detroit*, 252 Mich. App. 384, 387-88 (2002); *Tumbarella v. Kroger Co.*, 85 Mich. App. 482 (1978). To prevail on a false arrest or false imprisonment claim, a plaintiff must show that the arrest or imprisonment was not based on probable cause. *Valdez*, 58 F. Supp. 3d at 829 (citing *Peterson*, 259 Mich. App. at 18).

Defendants argue that Plaintiffs' state law false imprisonment claim fails as a matter of law because they cannot meet the fourth prong – that the imprisonment was "without right or authority to confine," because officers executing a valid search warrant have the authority to detain occupants while the search is being conducted. (ECF No. 25, Defs.' Mot., PageID.181-82, citing *Summers*, 452 U.S. at 704.)

Here, because the Court finds, *supra*, that probable cause existed to support the search warrant at issue, and thus the Plaintiffs cannot establish the absence of probable cause, the Court finds that Plaintiffs' claim of false imprisonment fails as

a matter of law. *See Seales v. City of Detroit, Michigan*, 959 F.3d 235, 243 (6th Cir. 2020) (holding that where probable cause exists, "claims for false arrest and false imprisonment fail because Michigan law does not treat them differently from the counterpart federal claims"); *Smith v. Township of Prairieville*, 194 F. Supp. 3d 658, 671-72 (W.D. Mich. 2016) (holding plaintiff's false imprisonment claim fails because "although Plaintiff may have been confined, the confinement was not false" because "[t]he officers had the authority to temporarily detain Plaintiff while the investigation was being completed[.]"); *Walsh*, 263 Mich. App. at 632 (plaintiff's false imprisonment claim failed because defendant had probable cause to detain and arrest him).

Plaintiffs' false imprisonment claim therefore is dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss, as follows:

The Court **GRANTS IN PART** Defendants' motion and **DISMISSES** Counts I and III, IV, V, VI, VII, and VIII of Plaintiffs' Complaint for failure to state claim.

The Court **DENIES IN PART** Defendants' motion as to Count II (Fourth Amendment – Unreasonable Search) with respect to Plaintiffs' allegations that

Defendants failed to knock and announce prior to entering Plaintiffs' home, and that

single claim survives.

**IT IS SO ORDERED.**


Dated: February 24, 2023

s/Paul D. Borman
Paul D. Borman
United States District Judge