UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RENEE DUNIGAN, et al.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**MICHAEL THOMAS, et al.,**<br><br>Defendants. | **2:22-CV-11038-TGB-EAS**<br><br>HON. TERRENCE G. BERG<br><br>**OPINION AND ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT AND RECOMMENDATION**<br><br>**(ECF NO. 89)** |

This is a civil rights lawsuit arising from the execution of a search warrant by the Michigan State Police at what turned out to be the wrong address.

Plaintiffs Renee Dunigan and Michelle Colston, individually and as next friend of A.C., a minor, D.W., a minor, and S.W., a minor, brought suit against Michigan State Police ("MSP") officers — Trooper Michael Thomas, Trooper Blake Ellsworth, Trooper Maxwell Prince, Trooper Jon Tibaudo, Trooper Dan Clise, Trooper Thomas Kill, Trooper Steven Chenet, Trooper Aaron Locke, Sergeant Derek Hoffman, Sergeant Andrew Pinkerton, Trooper Thomas Pinkerton, Sergeant Chad Gruenwald, Detective Sergeant Thomas Dhooghe, Detective Sergeant Joshua Dirkse, Detective Trooper Jason Baxter, and Detective Trooper Mark Swales (together "Defendants"), and Troopers Roe #s 1–10 and

Troopers John Doe #1–10 (together "unnamed Defendants") — asserting claims arising under 42 U.S.C. § 1983 and state law. *See* Complaint, ECF No. 2. Following the Court's partial grant of Defendants' Motion to Dismiss, the sole surviving claim is a § 1983 claim alleging a Fourth Amendment violation. Opinion and Order, ECF No. 38. Defendants and Plaintiffs have each moved for summary judgment. ECF Nos. 76, 78. Magistrate Judge Elizabeth A. Stafford issued a Report and Recommendation, recommending that Plaintiffs' Motion for Summary Judgment be denied, Defendants' motion for summary judgment be granted, and unnamed Defendants be dismissed. *See* Report and Recommendation, ECF No. 89. Plaintiffs have timely filed four objections to the Report and Recommendation. Objections, ECF No 90. This Court overrules some Objections, sustains others, and declines to address the others because they are mooted. Because the Court sustains some of the Objections and declines to address others, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** Judge Stafford's Report and Recommendation.

# I.  BACKGROUND

The following facts are not in dispute unless otherwise noted.

### A.  Factual Background

#### 1. The Parties

Defendants are Michigan State Police ("MSP") officers who executed a search warrant for a residence located at 1534 Garland Street. *See* ECF No. 2. The Plaintiffs reside at that address, which is a free-standing house. ECF No. 77, ¶24; ECF No. 84, ¶24; ECF No. 78, ¶2; ECF No. 81, ¶2. Plaintiffs have resided at 1534 Garland Street for over a decade, "with no history of criminal activity, gang activity, or any wrongdoing whatever." ECF No. 78, ¶3; ECF No. 81, ¶3.

#### 2. April 20, 2021 Homicide and Subsequent Investigation

On April 20, 2021, a 16-year-old boy was murdered in the City of Flint. ECF No. 77, ¶1; ECF No. 84, ¶1. The victim was driving a vehicle with another person in the passenger seat when an individual or individuals driving another vehicle fired shots into the victim's vehicle. The victim drove his vehicle into a field and crashed into a tree. He had been shot in the lower abdomen. The victim was treated at the scene and transported to a hospital where he died. ECF No. 77, ¶2; ECF No. 84, ¶2. Bullet casings of two different calibers (5.56, from a high-powered rifle,

and .45, from a handgun) were found at the scene of the crime. Affidavit and Application for Search Warrant, ECF No. 25-2, PageID.196.[1]

Officers searching the scene where the vehicle crashed found two pistols under the leaves and branches of a fallen tree, *see* ECF No. 84-2, PageID.1464, a short distance from where the victim's clothing was located on the ground. These weapons, however, were not of the same caliber as the casings. *See* ECF No. 25-3, PageID.208.[2]

Based on surveillance camera footage, Detectives were able to identify Demaurel Jackson as a suspect. ECF No. 77, ¶6; ECF No. 84, ¶6. Detectives were also able to identify the suspect vehicle as a 2015 silver Nissan Altima registered to and owned by Jackson's girlfriend, Breshanna Bailey. ECF No. 77, ¶¶7–8; ECF No. 84, ¶¶7–8.

---

[1] Defendants allege that the presence of two different calibers of bullet casings at the scene "le[d] officers to believe that there were two shooters." ECF No. 77, ¶3. However, Plaintiffs dispute this claim, arguing that "the affidavit [does not] make[] any mention of a second shooter being suspected." ECF No. 84, ¶3. Defendants' Statement of Material Facts cites to evidence that corroborates the claim that two shooters were suspected. *See* ECF No. 25-2, PageID.196; ECF No. 76-3, PageID.1120, 1126.

[2] Defendants allege that this "lead[] officers to believe the shooting was likely gang-related." ECF No. 77, ¶5. Plaintiffs dispute this claim. ECF No. 84, ¶5. The citation provided by Defendants in ECF No. 77, ¶5 is to a police report that mentions finding the handguns, but does not draw any inference that the presence of the handguns lead the officers to believe that the shooting was gang-related. ECF No. 25-3, PageID.207.

Detectives obtained an arrest warrant for Jackson and took him into custody outside a residence on McClure Avenue. ECF No. 77, ¶9; ECF No. 84, ¶9. The arrest occurred at approximately 3:00 p.m. on April 21, 2021. ECF No. 79-8, PageID.1285. Jackson remained in custody throughout "the relevant time period." ECF No. 78, ¶4; ECF No. 81, ¶4 (admitting this fact).

Based on the fact that they found two different kinds of casings, Defendants believed there was another suspect besides Jackson who fired a different gun. ECF No. 77, ¶6. The affidavit and application for search warrant refers to information provided by a bus driver who witnessed the shooting. The bus driver stated to the Detectives that he saw a Nissan vehicle with a passenger shooting from the vehicle and that the "*subjects* in the Nissan were shooting at another vehicle." ECF No. 25-2, PageID.196, ¶ 12 (emphasis added). Another witness who was riding the bus called and told a detective "he believed the silver vehicle [that he had seen at] the KC's Market were the *shooters* at Dupont St and Dayton St" Id at PageID.196, ¶ 15 (emphasis added); *see also* ECF No. 76-3, PageID.1120, 1126 (Dep. of Defendant Thomas)(explaining reasons the officers believed there was a second suspected shooter who was being sought).

Bailey, the owner of the suspect vehicle, was also present at the McClure Avenue residence and was questioned by detectives. ECF No. 77, ¶10; ECF No. 84, ¶10. Bailey informed detectives that Jackson was

her boyfriend. ECF No. 76-2, PageID.1111. Bailey also informed detectives that on the day of the homicide, Jackson dropped her off at work in the morning and that Jackson would use the car throughout the day. ECF No. 77, ¶12. However, after work, Bailey learned that Jackson was no longer in possession of her car. ECF No. 77, ¶13; ECF No. 84, ¶13 (neither admitting nor denying this fact).

Bailey also told detectives that she was taken to a residence by Jackson earlier that day—April 21, 2021—where she had seen the suspect vehicle. ECF No. 76-2, PageID.1109; ECF No. 77, ¶14. While Bailey was unable to give an address of where the suspect vehicle was located, she indicated that she could lead detectives there. ECF No. 76-2, PageID.1109–10; ECF No. 77, ¶¶15–16. Bailey rode with a detective, giving general directions to where she believed the car was located. ECF No. 76-2, PageID.1110–11; ECF No. 77, ¶¶15–16. The suspect vehicle was located in the center of a driveway shared by two residences: 1534 Garland Street and 1536 Garland Street. ECF No. 77, ¶17; ECF No. 84, ¶17; ECF No. 78, ¶¶10–11; ECF No. 81, ¶¶10-11. It had been parked there since 7:00 a.m. on April 21, 2021, the day after the shooting, and had not been moved. ECF No. 78, ¶7; ECF No. 81, ¶7. Bailey told detectives that earlier that day, she had observed Jackson go into "the blue house for a short time." ECF No. 76-2, PageID.1111. The blue house was the residence located at the 1534 Garland Street address. *Id.*

Subsequently, Detective Jason Baxter obtained search warrants for several residences where Jackson was believed to have been after the homicide, including the residence located at 1534 Garland Street. ECF No. 77, ¶18; ECF No. 84, ¶18.[3] The search warrant for the residence located at 1534 Garland Street was not a "no-knock warrant." ECF No. 78, ¶14; ECF No. 81, ¶14. The search warrant states, in relevant part, "that there is reasonable and probable cause to believe that evidence of criminal conduct" will be found in 1534 Garland Street, ECF No. 34-2, PageID.380, but does not mention any concern that a second suspect could be present at the residence.

Detectives selected the 1534 Garland Street residence (as opposed to the 1536 Garland Street residence) as the target of the search warrant because Bailey stated that she had seen Jackson enter it. ECF No. 78, ¶9; ECF No. 81, ¶9 (Plaintiffs do not deny this fact). No new evidence was discovered between the issuance of the warrant and its execution. ECF No. 78, ¶17; ECF No. 81, ¶17.

---

[3] Defendants allege that these warrants were obtained "[b]ecause a possible second suspect and the murder weapon were still outstanding." ECF No. 77, ¶18. Plaintiffs dispute this claim. ECF No. 84, ¶18. In support of their position Defendants cite to the search warrant affidavit itself, but that affidavit does not say that it was being sought because the second suspect and the murder weapon were still outstanding. Nonetheless, the investigative chain of events does suggest that officers were looking for the second suspect and the murder weapons, along with any other evidence of the crime.

On the same day, Najah Scott-Coleman, who was suspected of driving Jackson and Bailey around after the homicide, was interviewed in the Flint Police Department. ECF No. 78-7, PageID.1240. When she was "approached" she "had two firearms in her possession," which "were turned into property at Flint PD." *Id.* One of these firearms had a 5.56 caliber. *Id.*[4]

### 3. The 1534 Garland Street Raid

Later that day, prior to the execution of the search warrant of the 1534 Garland Street residence ("the 1534 Garland Street raid"), MSP officers executed three other search warrants at locations related to the homicide investigation. ECF No. 77, ¶19; ECF No. 84, ¶19. Defendant Trooper Michael Thomas, "team leader" of the 1534 Garland Street raid, recalled that the execution of these warrants received media attention prior to the 1534 Garland Street raid. ECF No. 76-3, PageID.1126.

---

[4] Defendants allege that "[n]o guns matching the caliber of the shell casings were found." ECF No. 77, ¶4. Plaintiffs dispute this claim. ECF No. 84, ¶4. In support, Defendants cite to the testimony of Defendant Trooper Mark Swales who stated that "the murder weapon is still at large." ECF No. 76-2, PageID.1109. Plaintiffs respond by pointing out that a gun matching the caliber of one of the shell casings was seized by officers from Scott-Coleman. ECF No. 84, ¶4. However, it was not known at the time whether that similar caliber weapon was used in the shooting. Thus, while a gun matching the caliber of one of the shell casings was found, the uncontroverted evidence in the record shows that officers believed that the murder weapon had *not* been found.

Plaintiffs deny that there was any actual media coverage of the earlier searches. ECF No. 84, ¶20.

As team leader of the 1534 Garland Street raid, Thomas "was responsible for gathering information in reference to the search warrant, serving as the point of contact for investigators, assigning duties to the entry team, and determining the tactical plan for how the warrant would be executed." ECF No. 78, ¶16; ECF No. 81, ¶16.

Prior to the 1534 Garland Street raid, members of MSP's Emergency Support Team ("ES Team") attended a briefing at the Metro Police Authority ("the briefing"). ECF No. 77, ¶21; ECF No. 84, ¶21.

In their "Statement of Material Facts Not in Dispute," ECF No. 77, the Defendant MSP officers allege that

> At the briefing, the ES Team was advised that this was a high-risk search warrant execution based on the following information:
>    a. The warrant execution was in relation to a homicide that had occurred approximately 20 hours earlier.
>    b. The homicide was a drive-by style shooting that was likely gang related.
>    c. Two separate kinds of shell casings were found indicating two shooters.
>    d. The shell casings were from a pistol and high-powered rifle.
>    e. One suspected shooter had been arrested, and one suspected shooter was still at large.
>    f. There were three other search warrants related to the homicide that were executed earlier in the day that received media coverage.
>    g. One of the suspected shooters had been seen entering the residence at 1534 Garland Street after the shooting.

    h. The suspect vehicle was parked in the shared driveway at 1534 Garland Street.

    i. Pre-raid surveillance showed that there were occupants in the house that were still awake and moving throughout the house.

    j. The firearms that matched the shell casings found at the homicide scene had not been recovered and remained outstanding.

ECF No. 77, ¶22, PageID.1164-65. In support of this claim Defendants cite the deposition of Defendant Trooper Thomas, the team leader of the 1534 Garland Street raid, *see* ECF No. 76-3; ECF No. 87-1.

In their "Answers to Defendants' Statement of Material Facts," Plaintiffs deny "that during the briefing, officers were advised as to any of the information purported by the Defendants." ECF No. 84, ¶22, PageID.1438. However, Plaintiffs' blanket denial by itself does not create an issue of fact. Plaintiffs cite to the officers' depositions—specifically to that of the team leader for the search, MSP Trooper Thomas—in which Plaintiffs say he testified that he did not "recall any specifics" as presented at the briefing. *Id.* (citing ECF No. 76-3, PageID.1116). However, in the cited portion of his deposition, Defendant Thomas testified that he did not recall specifics regarding "preraid surveillance" conducted on the Garland address—he did not say he had no recollection of any specifics presented *during the briefing*.

The Court will examine each of Defendants' "Statements of Material Fact Not in Dispute" (a.–j.) in turn.

*Statement a. The warrant execution was in relation to a homicide that had occurred approximately 20 hours earlier.*

While Defendant Thomas does not specifically testify that the ES Team was advised of this information at the pre-raid briefing, Defendant Thomas testifies that he was aware, prior to the execution of the search warrant, that the 1534 Garland Street raid "was in relation to a homicide investigation that had occurred hours prior, I think just in 20 or so hours prior." ECF No. 76-3, PageID.1125.

*Statement b. The homicide was a drive-by style shooting that was likely gang-related.*

While Defendant Thomas's testimony does not mention any suspicion that the homicide was gang-related, the record does contain evidence that Defendant Thomas, the team leader of the raid, had pre-raid information that the homicide was gang-related. Specifically, an April 21, 2021 Original Incident Report, listing Defendant Sergeant Dhooghe as the Complainant and Defendant Thomas as the officer who "investigated" the report, states that "The investigation showed that the shooting homicide was likely gang (violent) related and the weapons used were rifles and pistols. MCU requested that the ES team serve the search warrant because the second suspect was still outstanding, and the residence was affiliated with gang activity." ECF No. 84-12, PageID.1856.

*Statement c. Two separate kinds of shell casings were found indicating two shooters.*

*&*

*Statement d. The shell casings were from a pistol and high-powered rifle.*

While Defendant Thomas does not specifically testify that the ES Team was advised of this information at the pre-raid briefing, Defendant Thomas testifies that prior to the 1534 Garland Street raid, Defendant Thomas had information that "[t]his was like a drive-by style shooting where one vehicle was shooting at another and the crime scene, or at the crime scene they gathered rifle casings and pistol casings, which would be indicative of two separate shooters." ECF No. 76-2, PageID.1121.

*Statement e. One suspected shooter had been arrested, and one suspected shooter was still at large.*

*&*

*Statement h. The suspect vehicle was parked in the shared driveway at 1534 Garland Street.*

Defendant Thomas testified that during the pre-raid briefing, it was discussed that

> The suspect's vehicle was parked at this house. The second suspect that we had yet to identify could likely be at this house with the suspect's vehicle. There was weapons that were not recovered and we reminded everybody that the second suspect could very well be armed and there was some potential for conflict once we got into the house.

ECF No. 87-1, PageID.2013. Additionally, Defendant Thomas testified that during the pre-raid briefing,

> We discussed the likelihood of the suspect being there. He had not yet been apprehended and he was still at large. We felt with the vehicle being present at that residence, it was likely that the suspect was at that residence. … I would have expected [to see a suspect inside], yes.

*Id.* at PageID.2013–14.

> *Statement f. There were three other search warrants related to the homicide that were executed earlier in the day that received media coverage.*

While Defendant Thomas does not specifically testify that the ES Team was advised of this information at the pre-raid briefing, Defendant Thomas testifies that he "recall[ed]" that the other search warrants that had been executed prior to the 1534 Garland Street raid "made the news … and the fact that the State Police were executing search warrants throughout the city for this investigation was no longer a secret." ECF No. 76-2, PageID.1126.

> *Statement g. One of the suspected shooters had been seen entering the residence at 1534 Garland Street after the shooting.*

While Defendant Thomas does not specifically testify that the ES Team was advised of this information at the pre-raid briefing, Defendants—in other parts of their Statement of Material Facts— provide evidence that prior to the raid, Bailey had informed detectives that she had seen Jackson enter the 1534 Garland Street residence after the shooting. ECF No. 76-2, PageID.1111.

*Statement i. Pre-raid surveillance showed that there were occupants in the house that were still awake and moving throughout the house.*

While Defendant Thomas does not specifically testify that the ES Team was advised of this information at the pre-raid briefing, Defendant Thomas testifies that prior to the 1534 Garland Street raid, Defendant Thomas that he "receive[d] … information from th[e] pre-raid surveillance … that there was reports of lights being on inside and people moving about on the inside … meaning that people were there." *Id.* at PageID.1116.

*Statement j. The firearms that matched the shell casings found at the homicide scene had not been recovered and remained outstanding.*

While Defendant Thomas does not specifically testify that the ES Team was advised of this information at the pre-raid briefing, in his interview, Defendant Trooper Mark Swales stated that "the murder weapon is still at large." ECF No. 76-2, PageID.1109.

Accordingly, although Defendant Thomas's testimony does not state precisely what the total content of the briefing was, it does provide evidence of what was *known* by the team leader of the 1534 Garland Street raid prior to its execution. The Court finds that the record contains uncontroverted evidence that Defendant Thomas received the information contained in Statements a.-i. prior to the execution of the raid.

Additionally, Defendant Thomas testified that, going into the raid, "[w]e … knew that on our approach it was going to be difficult for us to approach stealthily and breach that door, so based on the facts and circumstances, there was a peak potential or high potential for us to encounter some violence, violence against the police if we were apprehending an armed homicide suspect," *id.* at PageID.1126.

At no time did Defendants from either the investigation or entry teams ever attempt to identify the residents of 1534 Garland Street. ECF No. 78, ¶12; ECF No. 81, ¶12. Nor was a Law Enforcement Information Network (LEIN) check ever performed on any of the other vehicles parked in the shared driveway. ECF No. 78, ¶13 ECF No. 81, ¶13.

At 10:30 p.m., members of the MSP's ES Team conducted the raid on the 1534 Garland Street residence. ECF No. 77, ¶23; ECF No. 84, ¶23. At this time, Plaintiffs Dunigan and Colston, along with Minor Plaintiffs A.C., D.W., and S.W., were present at the residence, "getting ready to put the Minor Plaintiffs to bed and to settle down for the night." ECF No. 78, ¶2; ECF No. 81, ¶2 (admitting this fact).

Immediately prior to entry, the emergency lights on a police cruiser were activated ECF No. 77, ¶25; ECF No. 84, ¶25. Plaintiff Dunigan and Plaintiff A.C. observed these emergency lights. ECF No. 77, ¶25; ECF No. 84, ¶25. The E.S. Team then pulled an armored "Bearcat" vehicle into Plaintiffs' driveway without any of the vehicle's lights on. ECF No. 78, ¶22; ECF No. 81, ¶22. The E.S. Team exited from the back of the vehicle

in tactical clothing and proceeded in the direction of the home's front door. ECF No. 78, ¶22; ECF No. 81, ¶22. Plaintiff A.C. "hear[d] … footsteps on the porch," ECF No. 76-5, PageID.1148, "within a snap of a finger" before officers breached the door, ECF No. 78-16, PageID.1352.

Plaintiffs did not open the door. ECF No. 77, ¶31; ECF No. 84, ¶31. Plaintiffs allege that they did not open the door because "Defendants wholly denied them any opportunity to do so." ECF No. 84, ¶31.

Defendant Sergeant Derek Hoffman announced "State Police Search Warrant" using his patrol vehicle's PA system. ECF No. 77, ¶29; ECF No. 84, ¶29. Officers shouted "State Police Search Warrant." ECF No. 77, ¶30; ECF No. 84, ¶30. From the sound that is audible in the available dashcam footage, it is clear that officers did not "knock," announce "police with a search warrant," and then wait for the occupants to answer. They announced their presence and nearly simultaneously used forced to enter the premises. None of the Plaintiffs heard any announcement before the door was breached. ECF No. 78, ¶26; ECF No. 81, ¶26. Defendant Trooper Jon Tibaudo used a ram to breach the door. ECF No. 77, ¶32; ECF No. 84, ¶32.

Magistrate Judge Stafford found that there is a genuine issue of fact as to whether these announcements occurred prior to the officers entering the premises. ECF No. 89, PageID.2032 ("there is an issue of fact about whether the officers knocked and announced before entering the premises, and, if so, how long they waited before entering"); ECF No.

84, ¶¶29, 30 (disputing that Defendant Hoffman's announcements or officers' announcement occurred prior to entering the residence). Plaintiffs object. ECF No. 91-1, PageID.2102. The Court addresses this objection, and the underlying factual dispute, below.

Defendants Thomas, Tibaudo, Ellsworth, Thomas Pinkerton, Andrew Pinkerton, Prince, Trooper Dan Clise, Trooper Steven Chenet, and Sergeant Chad Gruenwald, were the only known officers to have entered the home immediately following the breach of the door. ECF No. 77, ¶34; ECF No. 84, ¶34. Defendants Trooper Aaron Locke and Hoffmann were assigned to the perimeter during the initial entry and did not enter the 1534 Garland Street residence at any time. ECF No. 77, ¶35; ECF No. 84, ¶35 (neither admitting nor denying this fact). Defendant Detective Sergeant Joshua Dirkse was assigned to surveillance and did not enter the residence until after the ES Team made entry. ECF No. 77, ¶36; ECF No. 84, ¶36. Defendants Sergeant Thomas Dhooghe, Detective Trooper Jason Baxter, and Detective Trooper Mark Swales did not enter the residence until after the ES Team made entry. ECF No. 77, ¶37; ECF No. 84, ¶37.

Defendant Thomas testified that "during the course of the original clear and security of the house, the team members moved through methodically and they moved all of the occupants to a collection point where they are detained." ECF No. 76-3, PageID.1124. Defendant Thomas testified that he then "moved through and checked the entire

house." *Id.* The Plaintiffs were assembled in the living room. ECF No. 77, ¶39; ECF No. 84, ¶39. They were never handcuffed. ECF No. 77, ¶39; ECF No. 84, ¶39.

Plaintiff Dunigan informed Defendants that the suspect vehicle was likely associated with the neighboring residence. ECF No. 77, ¶1; ECF No. 84, ¶41.

Eventually, Defendants vacated the residence. ECF No. 77, ¶42; ECF No. 84, ¶42.

The door of the residence was later replaced at no direct cost to Plaintiffs. ECF No. 77, ¶33; ECF No. 84, ¶33.

## B. Procedural Background

On May 16, 2022, Plaintiffs filed the operative complaint in this case. ECF No. 2. In the complaint, Plaintiffs asserted eight causes of action against Defendants: (1) Unreasonable Entry, Search and Seizure under the Fourth and Fourteenth Amendments based on a lack of probable cause; (2) Unreasonable Entry, Search and Seizure under the Fourth and Fourteenth Amendments based an unreasonable execution of the search warrant; (3) False Imprisonment under the Fourth Amendment; (4) Excessive Force under the Fourth Amendment; (5) Equal Protection under the Fourteenth Amendment; (6) Intentional Infliction of Emotional Distress; (7) Trespass; and (8) False Imprisonment under Michigan law. *See* ECF No. 2; ECF No. 38 (Court summarizing the causes of action asserted in the complaint).

On February 24, 2023, Judge Borman dismissed all counts except for the portions of Count 2 that related to "Plaintiffs' allegations that Defendants failed to knock and announce prior to entering Plaintiffs' home, and that single claim survives." ECF No. 38, PageID.652.

As relevant here, in the opinion, the Court did not consider Defendants' exigent circumstance argument, stating that "Defendants' 'exigent circumstances' argument, made for the first time at oral argument [and omitted from Defendants' motion, was] waived for purposes of Defendants' motion to dismiss." *Id.* at PageID.618.

### C. Defendants' Summary Judgment Motion

On March 7, 2025, Defendants moved for summary judgment, arguing that they are entitled to qualified immunity. ECF No. 76. Specifically, Defendants argued that the execution of the warrant was reasonable because (1) Defendants announced their presence and purpose and (2) the rapid entry was objectively reasonable under the circumstances. *Id.* Defendants also argued that it is undisputed that Defendants Baxter, Dhooge, Dirkse, Hoffmann, Locke, and Swales were entitled to qualified immunity because they did not participate in the execution of the search warrant. *Id.* at PageID.1089–90.

### D. Plaintiffs' Summary Judgment Motion

On March 8, 2025, Plaintiffs moved for partial summary judgment. ECF No. 78. Specifically, Plaintiffs moved for summary judgment (1) on the fact that the knock-and-announce rule was clearly established at the

time of the warrant execution at issue; (2) that Defendants have waived any exigency defense; and (3) that there is no genuine factual dispute that Defendants failed to comply with the knock-and-announce rule's requirements. *Id.*

### E. Judge Stafford's Report and Recommendation

On August 1, 2025, Magistrate Judge Stafford issued a Report and Recommendation on both parties' summary judgment motions. ECF No. 89. Judge Stafford recommended that Plaintiffs' motion be denied, that Defendants' motion be granted, and that unnamed Defendants be dismissed from the action.

Specifically, Judge Stafford recommended that Defendants Baxter, Dhooge, Dirkse, Hoffmann, Locke, and Swales were entitled to qualified immunity because they were not part of the Entry Team that made the alleged unannounced forced entry into the premises. ECF No. 89, PageID.2029–31.

First, Judge Stafford found that there was an "issue of fact about whether the officers knocked and announced before entering the premises and, if so, how long they waited before entering. *Id.* at PageID.2032.

Next, Judge Stafford assessed Defendants' assertion that, in any case, no constitutional violation occurred because exigent circumstances existed. Judge Stafford concluded that Defendants had not waived the exigent circumstances argument. *Id.* at PageID.2033. Next, Judge

Stafford found that "defendants persuasively argue that the totality of the facts and circumstances known to the Entry Team created an exigent circumstance entitling them to immediately enter the premises." *Id.* at PageID.2036.

Lastly, Judge Stafford recommended that the unnamed Defendants be dismissed from the action. *Id.* at PageID.2038.

### F.    Objections to the Report and Recommendation

On August 15, 2025, Plaintiffs timely filed objections to Judge Stafford's Report and Recommendation. ECF No. 90. Specifically, Plaintiffs raised four objections: (1) "[t]he R&R Erred in Failing to Find that Defendants Waived the Affirmative Defense of Exigent Circumstances," *id.* at PageID.2053; (2) "[t]he R&R Erred in Finding that Exigent Circumstances Excused Compliance with the Fourth Amendment's Knock-and-Announce Requirements," *id.* at PageID.2058; that (3) "[t]he R&R Erred in Finding a Material Dispute of Fact Over Defendants' Failure to Knock and Announce," *id.* at PageID.2068; and (4) "[t]he R&R Erred in Awarding Summary Judgment to Defendants Baxter, Dhooghe, Dirkse, Hoffman, Locke, and Swales on the Basis of Lack of Personal Involvement," *id.* at PageID.2070.

Defendants did not file any objections to the Report and Recommendation.

## II. LEGAL STANDARD

### A. Standard Pertaining to Review of a Report and Recommendation

Either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Objections must cite the specific portion of the report and recommendation to which they pertain.

"The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 452–53 (N.D. Ohio 2012) (*quoting Thomas v. Arn*, 474 U.S. 140, 150 (1985)). Failure to object waives further review of a district court's adoption of the report and recommendation. *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 829 (6th Cir. 2007). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) And the filing of vague, general, or conclusory objections is insufficient to preserve issues for further review. *Cole v. Yukins*, 7 Fed. App'x 354, 356 (6th Cir. 2001).

This Court must review de novo (as if it were considering the issues for the first time) the parts of a report and recommendation to which a

party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge ... [or] receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### B.   Law Governing Motions for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the case under governing law. *Id.* at 249.

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial

court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252. For the Court to grant summary judgment, the evidence cannot be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## III. DISCUSSION

### A. Whether Defendants Waived the Exigent Circumstances Argument

In their motion for partial summary judgment, Plaintiffs characterize the exigent circumstances argument as an affirmative defense and argue that because Defendants omitted it from their answer to the complaint, they have "waived reliance on that defense for all proceedings in this matter." ECF No. 78, PageID.1190. In support of Plaintiffs' claim that the exigent circumstances argument is an affirmative defense, Plaintiffs rely on the Court's February 24, 2023 Opinion and Order granting in part and denying in part Defendants'

Motion to Dismiss. In that opinion, the Court recounted that "Defendants did not argue in their motion to dismiss that any 'exigent circumstances' existed in this case that would excuse the 'knock-and-announce' requirement, but did argue for the first time at oral argument that a failure to knock and announce would be so excused." ECF No. 38, PageID.618. Thus, the Court found that "Defendants' 'exigent circumstances' argument, made for the first time at oral argument[, was] waived for purposes of Defendants' motion to dismiss." *Id.*

In the Report and Recommendation, Judge Stafford rejected Plaintiffs' argument that the exigent circumstances argument is an affirmative defense. ECF No. 89, PageID.2033. First, Judge Stafford disagreed that the Court's conclusion that Defendants had waived the exigent circumstances argument at the motion to dismiss stage characterized the exigent circumstances argument as an affirmative defense. *Id.* Second, Judge Stafford highlighted that Plaintiffs "have presented no Sixth Circuit authority supporting their position that exigent circumstances is an affirmative defense that must be pleaded separately, along with qualified immunity," and pointed to Sixth Circuit case law expressing "reasons to doubt" such an assertion." *Id.* (citing *Szappan v. Meder*, No. 22-1551, 2023 WL 4760715, at *2 (6th Cir. July 26, 2023)).

Judge Stafford also examined whether, assuming *arguendo* that the exigent circumstances argument is an affirmative defense, Defendants

**25**

had waived it. ECF No. 89, PageID.2034. Judge Stafford considered that "Defendants moved to dismiss based on qualified immunity before discovery began and raised their exigent circumstances defense at oral argument." *Id.* Thus, Plaintiffs received "notice of [the exigent circumstance argument] 'by some means other than pleadings,'" resulting in "no prejudice to" Plaintiffs "and no waiver. *Id.* (citing (Fed. R. Civ. P. 8(c)).

Plaintiffs object to the Report and Recommendation's finding on this point. ECF No. 90, PageID.2053–58. Specifically, Plaintiffs argue that case law establishes that the exigent circumstances argument is an affirmative defense; that Plaintiffs were not on notice of Defendants' intention to raise the defense; that Plaintiffs were prejudiced by Defendants' failure to plead the defense; and that, in any case, a showing of prejudice is not a condition precedent for a finding of waiver under Federal Rule of Civil Procedure 8(c). *Id.*

The Court agrees with Judge Stafford's recommendation that the exigent circumstances argument is not an affirmative defense.

Federal Rule of Civil Procedure 8(c)(1) requires that a responsive pleading "must affirmatively state any avoidance or affirmative defense." This rule "should be read in conjunction with, and distinguished from, Rule 8(b), which deals with denials or negative defenses that directly contradict elements of the plaintiff's claim for relief." 5. Charles A.

Wright & Arthur R. Miller, Federal Practice and Procedure § 1270 (4th ed.). As the Sixth Circuit has explained

> An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case. … In determining whether a defense is an affirmative one, the starting point should be the list of affirmative defenses in Rule 8(c). A defense analogous to or a derivative of one of the listed defenses should generally be deemed an affirmative defense. A second major consideration is the fairness of allowing the defendant to assert the defense; if permitting the defendant to interpose the defense will force the plaintiff to perform additional discovery or develop new legal theories, these considerations will militate heavily in favor of terming the defense affirmative.

*Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986).

Plaintiffs' surviving § 1983 claim arises under the Fourth Amendment's protection "against unreasonable searches and seizures." Accordingly, it is well established that § 1983 plaintiffs, as part of their *prima facie* case, must show that the challenged search was unreasonable. *See generally Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Miller v. Taylor*, 877 F.2d 469, 472 (6th Cir. 1989).

"[T]he reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announced their presence and authority prior to entering." *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995). Plaintiffs' surviving claim alleges that Defendants' failure to knock and announce their presence prior to entering their residence was unreasonable. *See* ECF No. 2, PageID.54.

However, not every unannounced entry is unreasonable. Thus, an unannounced entry is reasonable when certain "exigent circumstances" are present. *See Ker v. California,* 374 U.S. 23, 40–41, (1963) (plurality opinion). In other words, "*absent exigent circumstances*, it is unreasonable for officers to enter a dwelling without first knocking and announcing their presence." *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996) (emphasis added). Defendants argue that the present case involved such exigent circumstances and that even if Defendants failed to knock and announce their presence prior to entering the residence — a fact disputed by Defendants — the entry was still reasonable.

Accordingly, a finding of exigent circumstances negates an element of a § 1983 plaintiff's *prima facie* case: the unreasonableness of the challenged search. As such, an exigent circumstances argument is plainly *not* an affirmative defense. *Cf. Ford Motor Co.*, 795 F.2d at 546 ("some defenses negate an element of the plaintiff's *prima facie* case; these defenses are excluded from the definition of affirmative defense").

Nor is this Court navigating in uncharted waters in so concluding: the Sixth Circuit has reasoned that because the exigent circumstances argument is "not 'analogous to or a derivative of one of the listed defenses,' and … *do*[es] *not operate extraneously to plaintiff's claim*," there are "reasons to doubt [plaintiff's] assertion that exceptions to the Fourth Amendment's warrant requirement are affirmative defenses subject to

28

waiver under Rule 8(c)." *Szappan*, 2023 WL 4760715, at *2 (emphasis added).

Plaintiffs argue that the holding in *Szappan* does not apply to this case because the Sixth Circuit's opinion "did 'not decide this issue,'" and arose in the context of the "Fourth Amendment's warrant requirement," not the "Fourth Amendment's Reasonableness Clause" implicated by an unannounced entry. *See* ECF No. 90, PageID.2054–55. However, Plaintiffs provide no justification as to why the question of whether the exigent circumstances argument is an affirmative defense should be treated differently in the context of the Fourth Amendment's warrant requirement than the Fourth Amendment's reasonableness requirement.

To the contrary, in both contexts — whether a warrantless entry or an unannounced entry — a presumptively unreasonable entry is deemed reasonable if the defendant establishes the existence of exigent circumstances. There is no reason to assume that the analysis of whether exigent circumstances is an affirmative defense differs depending on whether the context is entry without a warrant or entry with a warrant, but without knocking and announcing. In this case, the Court comes to the same conclusion in the context of unannounced entries as the Sixth Circuit does in the context of warrantless entries.

Lastly, the Court's February 24, 2023 Opinion and Order does not govern the question presented before the Court today. In that opinion, the Court stated that because Defendants had failed to raise the exigent

circumstances argument in their brief accompanying their motion to dismiss, but instead raised it at oral argument, they had waived the argument "for purposes of Defendants' motion to dismiss." ECF No. 28, PageID.618. The opinion did not address the issue of whether the exigent circumstances argument is an affirmative defense.

Plaintiffs' arguments to the contrary are unavailing.

First, Plaintiffs argue that there is "published appellate authority precisely" establishing that "'exigent circumstances' is an affirmative defense which must be pleaded separately from qualified immunity." ECF No. 90, PageID.2053. In support, Plaintiffs cite a single case, *Gennusa v. Canova*, 748 F.3d 1103 (11th Cir. 2014). *Id.* In the cited portion of *Gennusa*, the Eleventh Circuit addressed whether the defendants, police officers defending claims arising under § 1983 and 18 U.S.C. § 2520(a), had preserved the exigent circumstances argument for appeal by "clearly present[ing] it to the district court." *Gennusa*, 748 F.3d at 1116 (citation omitted). The court found that "[t]he single, passing reference to the prevention of the 'arguable destruction of or tampering with evidence' by Det. Marmo and Sgt. Canova in their renewed summary judgment motion — unaccompanied by any discussion or elaboration — was insufficient to preserve an exigent circumstances argument" for appeal. *Id.* In that context, the court concluded that "the answer of Det. Marmo and Sgt. Canova to the second amended complaint did not put the district court on notice that they were relying on exigent

circumstances, for that pleading did not mention exigent circumstances when it listed qualified immunity as an affirmative defense." *Id.*

Accordingly, *Gennusa* neither addresses whether the exigent circumstances argument is an affirmative defense nor whether it must be pleaded separately from qualified immunity. Thus, the opinion does not weigh upon the question before the Court today.

Second, Plaintiffs argue that "authority from this Circuit … leaves no doubt that the defense of exigent circumstances is affirmative in nature." ECF No 90, PageID.2054. Specifically, Plaintiffs, highlighting that an affirmative defense raises matters extraneous to a plaintiff's *prima facie* case, point to *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir. 1976), for the proposition that "lack of exigent circumstances is not an element of a knock-and-announce claimant's 'prima facie case,'" *id.*, and *United States v. Smith*, 386 F.3d 753, 758 (6th Cir. 2004), for the proposition that "[T]he government bears the burden of demonstrating exigent circumstances," *id.* (alteration in original).

However, *Murrie* does not establish the proposition for which it is cited, *see Murrie*, 534 F.2d at 698, and Plaintiffs do not explain the relationship — if there is one — between the allocation of the burden of proof and the inquiry into whether a defense is affirmative in nature.

In any case, these cases arise in the context of a motion to suppress, *see Murrie*, 534 F.2d 695; *Smith*, 386 F.3d 753, and are therefore inapposite to the present inquiry: while the burden of proof to establish

that a search was reasonable rests on the Government at a suppression hearing, *see United States v. Oliver*, 686 F.2d 356, 371 (6th Cir. 1982), *aff'd*, 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984), in a § 1983 action, the plaintiff has the burden of proving that the search was not reasonable. *See Miller*, 877 F.2d at 472.

The only remaining case on which Plaintiffs rely arises out of a completely different factual and legal circumstance. In *Carr v. Nat'l Disc. Corp.*, 172 F.2d 899 (6th Cir. 1949), the Sixth Circuit reviewed a case in which a plaintiff filed suit against a corporate entity for false arrest. *Id.* In that opinion, the court addressed a Michigan state statute which stated that "[o]ne may not be held liable for such arrest unless it was brought about without probable cause by his direct participation or by his indirect procurement." *Id.* at 902 (citation omitted). In that context, the Sixth Circuit stated in passing that "probable cause is an affirmative defense which must be pleaded before it can be proved." *Id.* at 903. Thus, *Carr* was addressing the concept of probable cause in the narrow context of a specific Michigan statute. Accordingly, *Carr* is wholly inapposite to the present circumstances.

It is of note that the last time this case was cited by another court, it was cited for the proposition opposite to that of Plaintiffs. *Hollis v. Bullard*, No. 10-10729, 2011 WL 5184228, at *3 (E.D. Mich. Nov. 1, 2011) (Zatkoff, J.) ("To establish a constitutional claim of false arrest under the Fourth Amendment, *a plaintiff must show that no probable cause existed*

for the arrest. ... *A plaintiff must also show that no probable cause* existed to support a claim of false imprisonment." (emphasis added) (citing *Carr,* 172 F.2d at 902 ("The gist of [a false imprisonment claim] is an unlawful detention, and, that being shown, the burden is on the defendant to establish probable cause for the arrest.")).

The remainder of Plaintiffs' objections address Judge Stafford's finding that, assuming *arguendo* that the exigent circumstances argument is an affirmative defense, Plaintiffs received notice of Defendants exigent circumstances argument. Because the Court finds that the exigent circumstances argument is *not* an affirmative defense, it need not address Judge Stafford's finding that Plaintiffs had notice.

Therefore, the Court **ADOPTS** this portion of Judge Stafford's Report and Recommendation and **OVERRULES** Plaintiffs' first objection. Accordingly, the Court **DENIES** Plaintiffs' motion for summary judgment on the question of whether Defendants waived the exigent circumstances argument.

### B. Whether Exigent Circumstances Justified Dispensing with the Knock-and-Announce Requirement

In their motion for summary judgment, Defendants argue that, assuming *arguendo* that the entrance into the 1534 Garland Street residence was unannounced, the Defendants "'could have reasonably believed that exigent circumstances existed' to justify noncompliance

with the knock and announce rule." ECF No. 76, PageID.1095–96 (citing *Dickerson v McClellan,* 101 F.3d 1151, 1158 (1996)).

Defendants allege that "there was reasonable suspicion that there was a risk of danger to the officers, and it was likely that the persons within already knew of the officer's authority and purpose." *Id.* at PageID.1097. Specifically, Defendants point to following alleged facts:

- The warrant execution was in relation to a homicide that had occurred approximately 20 hours earlier.
- The homicide was a drive-by style shooting that was likely gang related.
- Two separate kinds of shell casings were found indicating two shooters.
- The shell casings were from a pistol and high-powered rifle. One suspected shooter had been arrested, and one suspected shooter was still at large.
- There were three other search warrants related to the homicide that were executed earlier in the day that received media coverage.
- One of the suspected shooters had been seen entering the residence at 1534 Garland Street after the shooting.
- The suspect vehicle was parked in the shared driveway at 1534 Garland Street.
- Pre-raid surveillance showed that there were occupants in the house that were still awake and moving throughout the house.
- The firearms that matched the shell casings found at the homicide scene had not been recovered and remained outstanding.

*Id.* at PageID.1098–99.

In response, Plaintiffs argue that "Defendants had no plausible and particularized basis for believing that someone in the Dunigan-Colston

household would respond violently," ECF No. 84, PageID.1452; and that "[t]he absence of any pre-raid investigation of the Plaintiffs' home belies any perceived threat of danger to officers." *Id.* at PageID.1458.

Judge Stafford recommended that Defendants' Motion for Summary Judgment be granted as to this point. ECF No 89, PageID.2038. Judge Stafford found that "[b]ased on what was known by the officers at the time of entry, the officers' fear for their safety was reasonable and created an exigent circumstance entitling them to immediately enter the premises." *Id.* Specifically, Judge Stafford found that

> defendants persuasively argue that the totality of the facts and circumstances known to the Entry Team created an exigent circumstance entitling them to immediately enter the premises. Those facts include: 1) the search warrant related to a homicide of a 16-year-old boy from just 20 hours earlier, 2) the homicide was a "drive-by style" shooting; 3) the finding of two kinds of shell casings led the officers to believe there were two shooters; 4) the shell casings were from a pistol and a high-powered rifle; 5) one suspected shooter remained at large; 6) media was reporting about the homicide investigation and the three earlier search warrants; 7) a witness reported seeing one of the suspected shooters entering 1534 Garland after the shooting; 8) the suspect vehicle was parked in the shared driveway at 1534 Garland; 9) pre-raid surveillance revealed there were occupants inside the premises and moving about inside house; and 10) the firearms that matched the shell casings found at the homicide scene had not been recovered and remained outstanding. Based on those facts, the officers believed that it was likely that the second suspected shooter was inside the premises and that he

was armed, leading to a high potential of encountering violence upon entry.

*Id.* at PageID.2037.

Plaintiffs object to Judge Stafford's conclusion that the officers reasonably believed there were exigent circumstances capable of excusing the requirement to knock and announce their presence. ECF No. 90, PageID.2058. Plaintiffs argue that (1) "[t]he R&R Erred in Finding that Officers' Basis for Believing They Would Encounter Violent Resistance Was Particularized," *id.* at PageID.2058; (2) "[t]he R&R Erred by Trivializing Defendants' Failure to Conduct any Meaningful Pre-Raid Investigation of Plaintiffs' Home;" *id.* at PageID.2062; and (3) "[t]he R&R Erred in Relying on Disputed Factual Allegations to Find Exigent Circumstances to Excuse Defendants from Knock-and-Announce Requirements," *id.* at PageID.2063.

Having carefully considered Plaintiffs' objections, the Court concludes that they must be overruled.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation omitted). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the

light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (citation omitted). "Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Id.* (citation omitted).

> That is, although on summary judgment this Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party, when a defendant raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must show that those facts and inferences would allow a reasonable juror to conclude that the defendant violated a clearly established constitutional right.

*Id.* at 430–31 (citation omitted).

"When a court is faced with reviewing state law enforcement activities during the execution of a warrant, it must evaluate those actions in light of the Fourth Amendment's reasonableness requirement." *United States v. Bates*, 84 F.3d 790, 794–95 (6th Cir. 1996). "Law enforcement officers must knock and announce their presence and authority before entering a residence to execute a warrant." *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003) (citation omitted). Absent exigent circumstances, failure to do so is unreasonable. *Bates*, 84 F.3d at 795.

In *Wilson v. Arkansas*, the Supreme Court held for the first time that "the common-law knock and announce principle forms a part of the Fourth Amendment reasonableness inquiry." 514 U.S. 927, 930 (1995).

The *Wilson* Court left to lower courts "the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment" while holding that "although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry." *Id.* at 936.

Later, in *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997), the Supreme Court elaborated on the appropriate standard: "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.*

And the Sixth Circuit has further explained the general rule that "Officers executing a search warrant must knock and announce that they are seeking entry into a home and then wait a reasonable amount of time before entering." *Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 315 (6th Cir. 2018). Nevertheless, if the officers have reasonable suspicion that exigent circumstances justify foregoing the knock and announce requirement, an unannounced entry may be reasonable. As the Greer court stated, "Exigent circumstances may include the following situations:

> (1) there would be a danger to the officer; (2) there would be danger of flight or destruction of evidence; (3) a victim or some other person is in peril; or (4) it would be a useless gesture such as when the person within already knew the officer's authority and purpose."

*Id.* at 317. "However, officers must have more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing their presence." *Bates*, 84 F.3d at 795 (citation omitted). The reasonableness of the officers' decision to conduct an unannounced entry "must be evaluated as of the time they entered." *Richards*, 520 U.S. at 395. A court must conduct a "fact-specific test that evaluates whether" exigent circumstances "existed from the perspective of a reasonable officer." *Howell v. McCormick*, 148 F.4th 834, 844 (6th Cir. 2025). The Sixth Circuit has reminded courts that they should "closely scrutinize officers making a forced entry without first adequately announcing their presence and purpose." *Bates*, 84 F.3d at 795.

It is well-established that officers' reasonable suspicion of an exigent circumstance must be particularized to the circumstances of the entry. *See Richards*, 520 U.S. at 394 ("the police must have a reasonable suspicion that knocking and announcing their presence, *under the particular circumstances*, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence" (emphasis added)).

Accordingly, the Supreme Court has rejected exceptions to the knock-and-announce requirement for "categor[ies] of criminal investigation[s] that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence." *Id.* As the Court explained,

> Thus, the fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement.

*Id.*

Here, viewing the evidence in the light most favorable to Plaintiffs, a jury could not reasonably conclude that reasonable officers aware of the facts and circumstances here would have lacked reasonable suspicion of exigent circumstances justifying an unannounced entry and permitting a verdict for in favor of Plaintiffs.

The following relevant facts are not genuinely disputed: during the pre-raid hearing, the likelihood of the second suspect being present at the 1534 Garland Street residence was discussed, ECF 87-1, PageID.2014; attendees at that hearing felt that the second suspect's presence at the residence was "likely" because he "had not yet been apprehended and he was still at large," *id.*; there were "reports of lights being on inside and

people moving about on the inside … meaning that people were there,"
ECF No. 76-3, PageID.1116; "the suspect vehicle … was in the driveway
of 1534," *id.* at PageID.1117; the underlying crime was a "drive-by style
shooting," *id.* at PageID.1121; the evidence found at the crime scene was
"indicative of two separate shooters," *id.* at PageID.1121; Defendant
Thomas and others thought that it would be difficult to "approach
stealthily and breach that door," *id.* at PageID.1126; Defendant Thomas
and others thought there was "a peak potential or high potential for us
to encounter some violence, violence against the police if we were
apprehending an armed homicide suspect," *id.*; the homicide occurred
less than two days before the raid; Jackson, the suspect who had already
been arrested, had been observed allegedly entering the 1534 Garland
Street residence, ECF No. 76-2, PageID.1111; ECF No. 76-3,
PageID.1125; Defendant Thomas "recall[ed]" that the other search
warrants that had been executed prior to the 1534 Garland Street raid
"made the news … and the fact that the State Police were executing
search warrants throughout the city for this investigation was no longer
a secret," *id.* at PageID.1126. Additionally, the April 21, 2021 Original
Incident Report stated that "The investigation showed that the shooting
homicide was likely gang (violent) related and the weapons used were
rifles and pistols. MCU requested that the ES team serve the search
warrant because the second suspect was still outstanding, and the

**41**

residence was affiliated with gang activity." ECF No. 84-12, PageID.1856.

As stated above, the Supreme Court has held that to have exigent circumstances capable of excusing the knock and announce requirement, the officer must have a reasonable suspicion that (1) there would be a danger to the officer; (2) there would be danger of flight or destruction of evidence; (3) a victim or some other person is in peril; or (4) it would be a useless gesture such as when the person within already knew the officer's authority and purpose. *Greer,* 884 F.3d at 317. Here, the circumstances known to the officers related to the first factor of officer safety almost exclusively. They had no reason to believe that destruction of evidence or flight of a suspect was underway; no concern that a victim or other person was in peril; and no basis to conclude that it would be a useless gesture to knock and announce because the occupants already knew their authority and purpose.

No reasonable jury, faced with these facts, viewed in the light most favorable to Plaintiffs, could conclude that a reasonable officer in the position of the officers executing the search warrant would have lacked a reasonable suspicion that there would be a danger to the officers executing the warrant. The Court reaches this conclusion based on the following undisputed facts:

First, Defendant Thomas, the team leader of the raid, had pre-raid information that the homicide was gang related. ECF No. 84-12,

PageID.1856. Furthermore, MCU specifically requested that the ES Team "serve the search warrant because the second suspect was still outstanding, and the residence was affiliated with gang activity." *Id.*

Second, Defendant Thomas testified that during the pre-raid briefing, it was discussed that the second suspect "could likely be at this house with the suspect's vehicle" and could well be armed. ECF No. 87-1, PageID.2013.

Third, Defendant Thomas testified that during the pre-raid briefing, it was discussed that some weapons had not been recovered. *Id.*

Fourth, Defendant Thomas testified that he "recall[ed]" that the other search warrants that had been executed prior to the 1534 Garland Street raid "made the news." ECF No. 76-2, PageID.1126.

Fifth, one witness had informed Defendant Swales, present at the execution of the warrant, that the suspect already apprehended, Jackson, had been seen entering the 1534 Garland Street residence after the shooting. *Id.* at PageID.1111.

Sixth, Defendant Thomas testified that prior to the raid, he received information that people were in the residence. *Id.* at PageID.1116.

Seventh, Defendant Swales believed that "the murder weapon is still at large." *Id.* at PageID.1109.

There is no genuine dispute that these are the circumstances known to the decision-making officers at the time of their entrance into

the residence. Under these circumstances, no reasonable jury could find that from the perspective of a reasonable officer operating under these circumstances, exigent circumstances to enter without knocking and announcing did not exist. *See Howell*, 148 F.4th at 844.

Plaintiffs' arguments in response do not change this outcome.

First, Plaintiffs argue that "[t]he R&R Erred in Finding that Officers' Basis for Believing They Would Encounter Violent Resistance Was Particularized." ECF No. 90, PageID.2058. Specifically, Plaintiffs argue that "exigent circumstances based on peril to officers must be particularized to specific facts *regarding the premises to be searched or its occupants* that demonstrate that compliance with the rule would be dangerous or imprudent." *Id.* (cleaned up). Plaintiffs contend that the facts considered by Judge Stafford do not specifically pertain to the Plaintiffs or to Plaintiffs house. *Id.* at PageID.2059.

The Court disagrees. Officers relied on the particular circumstances surrounding the specific search warrant execution in reasonably finding that exigent circumstances existed to enter without knocking and announcing.

The case law relied upon by Plaintiff on this point does not change this outcome. For instance, in *Richards*, the Supreme Court rejected the conclusion of the Wisconsin Supreme Court "that police officers are *never* required to knock and announce their presence when executing a search warrant in a felony drug investigation." 520 U.S. at 387–88. Here, on the

other hand, officers considered the unique factual circumstances of the 1534 Garland Street raid.

Plaintiffs also take issue with Judge Stafford's failing to "regard [the] status of dispute" of the "ten factual allegations purportedly justifying the forced entry in this case." ECF No. 90, PageID.2059. However, as discussed above, Plaintiffs fail to raise a genuine dispute as to the fact that at the time of the execution of the warrant, the officers executing the search warrant, specifically Defendant Thomas, team leader of the raid, had been provided with the information contained in Statements a.-i. *This* is the information that must be considered when evaluating whether exigent circumstances existed. *See Richards*, 520 U.S. at 395; *Howell*, 148 F.4th at 844. Those facts, when viewed in the light most favorable to Plaintiffs, clearly indicate the existence of exigent circumstances. No reasonable jury could find otherwise.

Second, Plaintiffs argue that "[t]he R&R Erred by Trivializing Defendants' Failure to Conduct any Meaningful Pre-Raid Investigation of Plaintiffs' Home." ECF No. 90, PageID.2062. Specifically, Plaintiffs argue that "the failure to do a reasonable pre-raid investigation suggests, as the Third Circuit has held, 'either that the officers' concern that [Plaintiffs were] armed and dangerous was unreasonable or that the officers employed a generalized procedure that was unreasonable as applied to [the Plaintiffs'] home.'" *Id.* at PageID.2063 (alterations in original) (citing *Kornegay v. Cottingham*, 120 F.3d 392, 398 (3d Cir.

**45**

1997)). In context, however, *Kornegay* does not stand for the proposition for which it is cited. In *Kornegay*, the Third Circuit concluded that

> A reasonable jury could conclude that the reasons offered in support of this search merely "consisted of generalities that bore no relation to the particular premises being searched or the particular circumstances surrounding the search." *United States v. Stewart,* 867 F.2d 581, 585 (10th Cir.1989). That conclusion suggests either that the officers' concern that Selby was armed and dangerous was unreasonable or that the officers employed a generalized procedure that was unreasonable as applied to Kornegay's home.

*Kornegay*, 120 F.3d at 398. Thus, when the reasons to support a no knock warrant "*consisted of generalities,*" it suggests that "either that the officers' concern that Selby was armed and dangerous was unreasonable or that the officers employed a generalized procedure that was unreasonable as applied to Kornegay's home." *Id.*

Plaintiffs also cite *Noel v. Artson*, No. 06-2069, 2007 WL 9662433 (D. Md. Sept. 6, 2007), and *Jones ex rel. Z.J. v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672 (8th Cir. 2019). ECF No. 90, PageID.2062. These cases establish that in *some* circumstances, a failure to sufficiently investigate can be *a factor* in finding that no exigent circumstances existed. *But see Jones ex rel. Z.J.*, 931 F.3d at 688 (concluding that even though the officers "performed virtually no investigation … the detectives did not violate clearly established law").

This, however, is *not* one of those circumstances. Here—unlike in *Kornegay*, where "[a] reasonable jury could conclude that the reasons offered in support of this search merely 'consisted of generalities that bore no relation to the particular premises being searched or the particular circumstances surrounding the search,'" 120 F.3d at 398; or *Jones ex rel. Z.J.*, where officers "had no information that would have supported the need to send the SWAT team to execute the search warrant," 931 F.3d at 688; or *Noel*, where officers "conducted scant investigation, … mischaracterized" some facts and "ignored" others, 2007 WL 9662433, at *9—officers acted on particularized information of the dangerousness of the execution of the specific warrant, including, for instance, information that a homicide suspect "could likely be at this house with the suspect's vehicle" and could well be armed. ECF No. 87-1, PageID.2013.

Third, Plaintiffs argue that "[t]he R&R Erred in Relying on Disputed Factual Allegations to Find Exigent Circumstances to Excuse Defendants from Knock-and-Announce Requirements." ECF No. 90, PageID.2063. Specifically, Plaintiffs raise seven instances in which "the R&R relied on … disputed … 'facts,' erroneously treating them as undisputed." *Id.*

As explained above, the record here contains undisputed facts regarding the information under which the officers executing the search warrant were operating. *See Howell*, 148 F.4th at 844 (a court must

conduct a "fact-specific test that evaluates whether" exigent circumstances "existed from the perspective of a reasonable officer"). That information gave the officers a reasonable belief of danger, which is a basis for exigent circumstances justifying a no-knock entry. On these facts, no reasonable jury could find to the contrary, so Defendants are entitled to summary judgment on the Fourth Amendment claim. Plaintiffs' argument amounts to challenging the underlying *truth* of the information, not whether the officers executing the search warrant, namely Defendant Thomas, were operating with the knowledge of that information. Thus, insofar as Plaintiffs raise genuine issues as to certain facts, they are not *material* facts. Therefore, the Court **ADOPTS** this portion of Judge Stafford's Report and Recommendation and **REJECTS** Plaintiffs' second objection. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on the question of whether exigent circumstances existed.

**C.    Whether Summary Judgment Should Be Granted in Plaintiffs' Favor as to Whether Defendants' Entry was Unannounced**

In their motion for summary judgment, Plaintiffs argue that there is no genuine factual dispute that Defendants failed to comply with the knock-and-announce rule. ECF No. 78, PageID.1190.

However, given that the Court has granted Defendants' motion for summary judgment on the question of whether exigent circumstances existed, the question of whether Defendants' entry was unannounced is moot. *United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir. 1990) ("While it might be argued that the officers waited an insufficient time prior to knocking down the door to the apartment, certainly we agree with the district court that exigent circumstances justified the officers' behavior). Whether the officers violated the knock-and-announce rule by entering almost simultaneously to their knock makes no difference where, as the Court has concluded here, the officers were entitled to enter immediately based on exigent circumstances.

Therefore, the Court **DENIES** Plaintiffs' motion for summary judgment on the question of whether Defendants complied with the knock-and-announce rule without ruling on the merits Plaintiffs' third objection. Because Judge Stafford's Report and Recommendation addresses the merits of this point, which we decline to address because it is moot, the Court **DECLINES TO ADOPT** that portion.

### D.   Whether Summary Judgment Should Be Granted to Defendants Baxter, Dhooghe, Dirkse, Hoffman, Locke, and Swales on the Basis of a Lack of Personal Involvement

In their motion for summary judgment, Defendants move for summary judgment as to "Defendants Baxter, Dhooghe, Dirkse, Hoffmann, Locke, and Swales," because they "were not part of the initial entry team that executed the search warrant." ECF No. 76, PageID.1089.

In opposition, Plaintiffs argue that "Defendants Baxter, Dhooghe, Dirkse[], and Swales all entered Plaintiffs' home during the execution of the search warrant following the forced entry," and that "Defendants Hoffman and Locke, … were present at the perimeter and timing of the forced entry and coordinated steps and roles in effectuating the operation during the pre-raid briefing with other SWAT officers, including Hoffman's triggering of his emergency lights to signal deployment of the battering ram." ECF No. 84, PageID.1450.

Judge Stafford granted summary judgment to Defendants Baxter, Dhooghe, Dirkse, Hoffman, Locke, and Swales, finding that "Locke and Hoffman never entered the residence, while Dirkse, Baxter, Dhoohe, and Swale entered the residence only after the search was underway, so none of those officers bore direct responsibility for the alleged unconstitutional entry." ECF No. 89, PageID.2029.

Judge Stafford also found that

Plaintiffs' failure-to-intervene argument lacks merit because the only remaining claim here is that portion of Count II

**50**

alleging that defendants failed to knock and announce their presence. Count II includes no claim that any officer failed to intervene during the entry into the residence. And plaintiffs may not assert a new claim in response to a summary judgment motion.

*Id.* at PageID.2030–31 (citations omitted).

Plaintiffs object to this ruling.

First, Plaintiffs argue that Defendants Baxter, Dhooghe, and Swales were "also integrally involved in the planning and oversight of the operation, including propagating the baseless falsity to members of the entry team that Plaintiffs' house was 'affiliated with gang activity,' thereby directly contributing to the false conclusion regarding any plausible threat posed to officers." ECF No. 90, PageID.2070.

Second, Plaintiffs argue that "Defendants Hoffman, Locke, and Dirkse were similarly involved in the unlawful breach's planning and execution and were present in the vicinity of the residence throughout the operation. Hoffman was also responsible for triggering the lights that signaled to officers when to commence the door breach." *Id.* at 2071.

In a § 1983 lawsuit, "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Thus, "mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984). "Further, a supervisory official's failure to

supervise, control, or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

Here, nothing in the record indicates that Defendants Baxter, Dhooghe, Dirkse, Hoffmann, Locke, and Swales participated in the allegedly unconstitutional search.[5]

First, Plaintiffs provide no evidentiary citation to their allegation that Defendants Baxter, Dhooghe, and Swales "were … integrally involved in the planning and oversight of the operation." ECF No. 90, PageID.2070. Without some evidentiary foundation, this allegation cannot create an issue of fact. While Defendant Baxter obtained the search warrant, ECF No. 77, ¶18; ECF No. 84, ¶18, and Defendants Dhooghe, Baxter, and Swales entered the residence *after* the ES Team made entry, ECF No. 77, ¶37; ECF No. 84, ¶37, these actions do not make

---

[5] Given that the Court has granted summary judgment in favor of Defendants on the issue of exigent circumstances, the question of Defendants Baxter, Dhooghe, Dirkse, Hoffmann, Locke, and Swales participation in the underlying search is, in some respects, moot. However, given that Plaintiffs raise certain allegations about Defendants Baxter, Dhooghe, Dirkse, Hoffmann, Locke, and Swales that may give rise to § 1983 liability irrespective of the constitutionality of the 1534 Garland Street raid—such as the claim that Defendants Baxter, Dhooghe, and Swales "propagat[ed] the baseless falsity to members of the entry team that Plaintiffs' house was 'affiliated with gang activity.'" ECF No. 90, PageID.2070—the Court considers it prudent to reach this issue.

Defendants Baxter, Dhooghe, and Swales liable for the purported unreasonable search, particularly when the claim is a failure to knock and announce and a lack of exigent circumstances.

Plaintiffs also argue that Defendants Baxter, Dhooghe, and Swales "propagat[ed] the baseless falsity to members of the entry team that Plaintiffs' house was 'affiliated with gang activity.'" ECF No. 90, PageID.2070 (citing ECF No. 84-12, PageID.1856). In support, Plaintiffs cited to an incident report authored by Defendant Thomas in which Defendant Dhooghe is listed as a "Complainant." ECF No. 84-12, PageID.1856. This evidence, viewed in the light most favorable to the Plaintiffs, would not allow any reasonable juror to find that Defendant Baxter, Dhooghe, and Swales are liable for the purported unreasonable search. In any case, Plaintiffs provide no citation to any case law finding officers liable under § 1983 for a failure to knock and announce when their only alleged participation in the entrance is in providing allegedly false information to the entering officers.

Second, Plaintiffs provide no evidentiary citation to their allegation that "Defendants Hoffman, Locke, and Dirkse were similarly involved in the unlawful breach's planning and execution and were present in the vicinity of the residence throughout the operation." ECF No. 90, PageID.2071. Nor do Plaintiffs support with evidence the claim that "Hoffman was also responsible for triggering the lights that signaled to

**53**

officers when to commence the door breach." *Id*. A bald allegation without evidence cannot create an issue of fact.

Accordingly, the record is devoid of evidence that would allow a reasonable juror to find that Defendants Baxter, Dhooghe, Dirkse, Hoffmann, Locke, and Swales were liable for the purported unreasonable search.

Therefore, the Court **ADOPTS** this portion of Judge Stafford's Report and Recommendation and **OVERRULES** Plaintiffs' fourth objection. Accordingly, the Court **GRANTS** summary judgment in favor of Defendants Baxter, Dhooghe, Dirkse, Hoffmann, Locke, and Swales.

## IV. CONCLUSION

For the reasons above, Plaintiffs' objections are **OVERRULED**. The Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** Judge Stafford's August 1, 2025, Report and Recommendation (ECF No. 89). Accordingly, Defendants' motion for summary judgment (ECF No. 76) is **GRANTED**. Plaintiffs' motion for partial summary judgment (ECF No. 78) is **DENIED**.

**SO ORDERED.**

Dated: January 27, 2026          s/Terrence G. Berg
                                 _____
                                 HON. TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE